[Crim. No. 15781. Second Dist., Div. Four. Dec. 26, 1968.]

THE PEOPLE, Plaintiff and Appellant, v. UNION OIL COMPANY OF CALIFORNIA, INC., Defendant and Respondent.

Thomas C. Lynch, Attorney General, Walter S. Rountree, Assistant Attorney General, and David B. Stanton, Deputy Attorney General, for Plaintiff and Appellant.

L. A. Gibbons, George C. Bond, McCutchen, Black, Verleger & Shea, Howard J. Privett and Peter W. James for Defendant and Respondent.

FILES, P. J.—This is a prosecution commenced in the municipal court upon a complaint charging that on November 20, 1967, defendant deposited petroleum products into state waters, in violation of Fish and Game Code section 5650.[1]

The municipal court sustained a demurrer to the complaint

---

[1] Fish and Game Code section 5650: ''It is unlawful to deposit in, permit to pass into, or place where it can pass into the waters of this State any of the following:

(a) Any petroleum, acid, coal or oil tar, lampblack, aniline, asphalt, bitumen, or residuary product of petroleum, or carbonaceous material or substance. . . .''

Fish and Game Code section 12000 makes a violation of this section a misdemeanor, punishable by fine or imprisonment in the county jail. (See §§ 12002, 12010.)

and dismissed the case. On the People's appeal, the appellate department of the superior court reversed. Pursuant to rule 63, California Rules of Court, the appellate department certified the case to the Court of Appeal, which ordered a transfer to settle an important question of law, that is, whether the Dickey Water Pollution Act, Water Code sections 13000-13080, has so far superseded Fish and Game Code section 5650 as to preclude any criminal prosecution for the act charged. After reviewing the matter we conclude that the appellate department correctly decided that the complaint states a public offense which is subject to criminal prosecution under section 5650.

.The Dickey Act provides that the State Water Resources Control Board shall formulate and adopt a statewide policy for control of water pollution (Wat. Code, § 13022). Nine regional water quality control boards are created (§§ 13040, 13041), with authority to prescribe requirements relative to a particular condition of pollution (§ 13053) and issue cease and desist orders against persons who cause pollution (§ 13060). Upon failure of any person to comply with such cease and desist order the board making the order may call upon the district attorney to petition the superior court for the issuance of an injunction restraining the violation (§ 13063).

At the time the Dickey Act was enacted (1949) section 481.5 (now § 5651) was added to the Fish and Game Code. This section, in substance, provides that whenever the Department of Fish and Game determines that a continuing and chronic condition of pollution exists, it shall report that condition to the appropriate regional water quality control board ''and shall cooperate with and act through such board in obtaining correction in accordance with any laws administered by such board for control of practices for sewage and industrial waste disposal.''

The complaint filed in the municipal court against defendant simply charges a violation of section 5650 of the Fish and Game Code, in the statutory language. In order to bring before the municipal court some additional facts which defendant contends are material, the parties entered into a stipulation that certain facts therein stated would be considered in ruling upon defendant's demurrer as if they appeared on the face of the complaint or were subject to judicial notice. The additional facts were in substance these:

(1) Defendant operates a petroleum refinery which discharges into the Los Angeles inner harbor waste water containing a residuary product of petroleum.

(2) In compliance with Water Code section 13054, a regional water quality control board has established requirements with respect to the quality of defendant's waste water.[2]

(3) The continuing and chronic condition of defendant's usual daily waste water discharge was the condition of the waste water discharged on November 20, 1967, the date of the alleged offense.

(4) The Department of Fish and Game requested the water board to take action against defendant under the provisions of Water Code section 13060 on the ground defendant's discharge constituted a chronic condition of pollution. That request was "taken under consideration" by the water board.

The ground upon which the municipal court sustained the demurrer and dismissed the case is that the facts stated do not constitute an offense (see Pen. Code, § 1004, subd. 4). The complaint as originally drawn, stating the offense in the words of the statute, was sufficient to withstand demurrer (see Pen. Code, § 952). The question now is whether the facts added by the stipulation establish as a matter of law that no violation of Fish and Game Code section 5650 could have been committed. Stated differently, if there is any possible state of facts which would constitute a violation and which is consistent with the additional facts set forth in the stipulation, the demurrer lacked merit. In order to uphold the dismissal, it is and must be defendant's position that these additional facts establish a complete defense to any alleged violation of section 5650 by it on November 20, 1967.

It should be noted that the stipulation does not state that defendant has complied or attempted to comply with the requirements of the regional board with respect to the quality of defendant's waste water. The implication is that there is at least a dispute on this subject, for the stipulation

---

[2]A complete copy of these "discharge requirements" is attached to the stipulation as an exhibit. The document, which is headed "additional permit conditions," contains only a list of nine specific prohibitions and a requirement that the "permittee" agree to reimburse the city for the cost of clearing or repair of the harbor facilities which may be made necessary by its use. Nowhere is there any express authorization to deposit petroleum or petroleum products in the water.

includes the statement that the department has asked the regional board to issue a cease and desist order under Water Code section 13060. We do not have before us any question as to what defenses, if any, might be available to defendant if it were to show that it had complied with the requirements of the regional water quality control board.

Three circumstances, taken together, are persuasive:

*First*: Fish and Game Code section 5650 is similar to former section 481 of the Fish and Game Code of 1933 (Stats. 1933, ch. 73, § 481, p. 440). Former section 481 was derived from section 635 of the Penal Code of 1872. When in 1949 the Legislature adopted the Dickey Act as an amendment to the Water Code, it made no change in the language of Fish and Game Code section 481 (now § 5650). At that time the Legislature added section 481.5 (now § 5651) to the Fish and Game Code, whereby the Department of Fish and Game was directed to report chronic violations to the newly created regional boards. This pattern indicates that the civil proceedings against violators under the Dickey Act were intended to supplement, not supplant, criminal proceedings under former section 481. ■ In providing a remedy by means of a cease and desist order enforceable by injunction, the Legislature expressed no intent to eliminate criminal prosecutions. The failure to amend or repeal former section 481 when former section 481.5 was added could hardly be deemed an oversight.

■ *Second*: The Dickey Act expressly refrains from preempting the field or making its procedure the exclusive remedy for water pollution. ■ Water Code section 13001 provides that no provision of that act or any ruling of the state board or any regional board is a limitation upon the power of a city or county to adopt and enforce additional regulations, or on the power of any state agency in the enforcement of any law which it is "specifically permitted or required to enforce," or the right of any person to maintain an action for relief against a private nuisance. In view of that reservation of power to cities, the City of Manhattan Beach, suing in the name of the People, was able to maintain an action against the City of Los Angeles to abate a nuisance created through a discharge of sewage into Santa Monica Bay. (*People* v. *City of Los Angeles* (1958) 160 Cal.App.2d 494 [325 P.2d 639].)

In *People* v. *New Penn Mines, Inc.* (1963) 212 Cal.App.2d

667 [28 Cal.Rptr. 337] it was decided that the Attorney General could not maintain a civil action to enjoin water pollution without proceeding under the Dickey Act. The appellate court concluded that the common law powers of the Attorney General in this field had been replaced by a statutory procedure. There is nothing in the reasoning or holding of that case to support the defendant's argument here that the penal statute upon this subject has been repealed or made inapplicable to those guilty of chronic pollution.

■ *Third*: In three formal published opinions the Attorney General has ruled that Fish and Game Code section 5650 continues to be applicable to chronic as well as occasional offenders. (33 Ops.Cal.Atty.Gen. 77 (1959) ; 42 Ops.Cal.Atty. Gen. 53 (1963) ; 48 Ops.Cal.Atty.Gen. 23, 29 (1966).) This interpretation is entitled to great weight, and the lapse of time since the first announcement of that view supports the inference that if it were contrary to legislative intent, some corrective measure would have been adopted. (See *Meyer* v. *Board of Trustees* (1961) 195 Cal.App.2d 420, 431-432 [15 Cal.Rptr. 717].)

We find unpersuasive the authorities cited by defendant which hold that in some other situations and in other jurisdictions administrative regulation has been held to supersede criminal prosecution. The California Legislature might have so provided when it adopted the Dickey Act, but it did not. Nor is defendant's cause here aided by Harbors and Navigation Code section 151, which was enacted by the 1968 Legislature, providing for civil penalties to be imposed upon a person who intentionally or negligently causes oil to be deposited in the waters of the state. That new statute provides an additional weapon against those who pollute harbor waters, but without eliminating the means otherwise provided by law.

■ In arguing that it is exempt from criminal prosecution, defendant emphasizes the fact that its discharge of pollutants into the harbor waters is a chronic condition. This is the foundation of its argument that a cease and desist order under the Dickey Act (which is designed especially for chronic violators) is the only remedy the state has. Defendant's interpretation would mean that criminal prosecution is reserved for the occasional violator, but immunity is conferred upon one who continuously, wilfully and inexcusably dumps any quantity of pollutants into the waters of this

state. We cannot find that to be the legislative intent. Whether defendant is guilty or not should be determined in a trial.

The judgment of dismissal is reversed.

Jefferson, J., and Wapner, J. pro tem.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 19, 1969. Mosk, J., did not participate therein.

———

*Assigned by the Chairman of the Judicial Council.