*Supp. 4 Opinion
HARVEY, P. J.
These are consolidated appeals. Both appeals involve the question whether violation of Food and Agricultural Code section 20607[1], which prohibits misbranding of cattle, is a strict liability offense or whether the offense requires criminal intent and knowledge. Because the issue is important to the entire cattle industry, the California Cattlemen’s Association and the California Department of Food and Agriculture have each filed an amicus curiae brief.
We hold that misbranding, as prohibited by section 20607, is a strict liability offense, and neither an intent to brand the cattle of someone else nor knowledge that the cattle being branded belong to someone else is an element of the offense. We also hold that a brand owner violates the statute when his employees, in the course of their employment, apply his brand to cattle that are not owned by him.
Defendant and appellant John J. Casey (sometimes referred to hereinafter for convenience as Casey) was convicted of 10 counts of violating section 20607. In a separate trial, defendant and appellant Robert Charles Roberts (sometimes referred to hereinafter for convenience as Roberts) was also convicted of 10 counts of violating section 20607.
The trial court suspended imposition of sentence in both cases and placed both defendants on probation, requiring them to pay large fines and restitution and to serve disciplinary terms in the Lassen County jail. Both defendants have appealed.
The evidence showed that both Casey and Roberts are owners of large, adjoining cattle ranches in Lassen County. The ranches cover several thousand acres, and the two ranchers have several thousand cattle running loose on those ranches. As the cattle range at large on the respective ranches and on nearby government land managed by the Bureau of Land Management, they sometimes cross the boundaries of each other’s ranches and intermingle.
Ownership of the cattle is determined by the brand. (§§ 20602, 20609.) California has enacted a comprehensive scheme for registering cattle brands (§§ 20661-20672, 20691-20701), for placement of brands on cattle (§ 20603), for voiding brands when cattle are transferred (§§ 20631-20634), for elimination of duplicate or similar brands (§§ 20791-20797), for inspection of brands when cattle are transferred or slaughtered (§§ 21051, 21052), and for *Supp. 5 inspection of hides of cattle that are slaughtered (§§ 21451-21459). (See, generally, §§ 20001-22086.) Under these statutes, each cattle owner has a distinct brand registered with the State of California, and he places that brand on the cattle to identify the ownership as the cattle mingle together on the range. Transfers of the cattle to other owners and to processors must be supervised by state brand inspectors and evidenced by a trail of bills of sale and legally altered brands.
Cattle ranchers gather their cows from time to time in order to brand their new calves. Because the cattle mingle together on the range, and they sometimes cross fence and boundary lines, it is not uncommon for cows and calves owned by other ranchers to be mixed up when they are gathered for the branding process.
The ownership of the unbranded calves included in the group is determined by a process known as “mothering up.” That is, the calves suckle only on their own mother cows, and the mother cows permit only their own calves to suckle. So, for a rancher to be sure that he is branding only his own calves, either before the branding process begins, or as the branding of the new calves proceeds, those calves that are suckling on cows bearing the brands of other ranchers must be excluded from the group to be branded.
Because ownership of calves is determined by “mothering up” the suckling calves, if a calf is branded with a different brand than that borne by the mother cow, there is no way to determine that difference after the calf is weaned. Once the calf stops suckling on the branded cow, for all practical purposes, the calf is then owned by the person whose brand was placed upon the calf, regardless of what brand was borne by the mother cow.
In the Casey trial, the evidence showed that after the spring branding in 1992, eight calves with Casey’s brand on them were suckling on cows bearing Roberts’s brand. Casey’s brand was also on a calf suckling on a French Ranch cow and on a calf suckling on a Mendiboure Ranch cow. In the Roberts trial, the evidence showed that 10 calves bearing Roberts’s brand were suckling on cows bearing Casey’s brand.
Casey and Roberts were each convicted of 10 counts of violation of section 20607. Section 20607 provides: “It is unlawful for any person to use a brand on cattle indicating ownership unless the cattle are owned by him or he has been authorized by the owner of the cattle and the brand is recorded under the owner’s name and is on file with the Bureau of Livestock Identification.”
Both cases were tried in the municipal court upon the theory that the People had to show that the defendant knew that the calf he was branding *Supp. 6 belonged to someone else and that the defendant intended to brand another person’s calf. The jury found both defendants guilty under that theory.
On appeal, both appellants urge errors relating to the admission of evidence, the sufficiency of the evidence, and the instructions. All of the alleged errors, however, relate to the issues of the intent and knowledge of the appellants. In response, the People argue that it is not necessary to consider those claims of error, because the statute does not require that any intent or knowledge be shown. The statute makes it unlawful to use a brand on cattle unless the cattle are in fact owned by the brander, or the brander is authorized to apply the brand by the actual owner. Both the California Cattlemen’s Association and the Department of Food and Agriculture also argue that the statute does not require a showing of intent to misbrand.
Penal Code section 20 provides: “In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence.”
Despite this provision, it has long been settled both in California law and at common law that certain statutes are enacted for various public regulatory purposes, and criminal sanctions are imposed for violations of the statutes even in the absence of wrongful intent. Although criminal sanctions are relied on to enforce the statutes, the primary purpose of the statutes is regulation rather than punishment. The offenses usually involve light penalties and no moral obloquy or damage to reputation. (See People v. Chevron Chemical Co. (1983) 143 Cal.App.3d 50, 52-54 [191 Cal.Rptr. 537].)
There are numerous examples of such regulatory statutes where strict criminal liability is imposed despite a lack of any wrongful intent. For example, in People v. Chevron Chemical Co., supra, 143 Cal.App.3d 50, the court held that violation of Fish and Game Code section 5650, prohibiting the deposit of deleterious materials into state waters, was a strict liability offense. In People v. Travers (1975) 52 Cal.App.3d 111 [124 Cal.Rptr. 728], violations of statutes prohibiting the misbranding and mislabeling of motor oil were held to be strict liability offenses.
Whether section 20607 creates a strict liability offense or whether it requires a showing of criminal intent is a matter of statutory construction involving a consideration of several factors. The specific language of the section involved must be considered. The penalties imposed for violation of the section are an indication of legislative intent: if the penalties prescribed are light, misdemeanor penalties, strict liability is more likely. But if the penalties prescribed are felony penalties, then it is more likely that criminal *Supp. 7 intent is an essential element of the offense. The entire regulatory scheme created by statute must also be considered along with the operation of the particular statute within the context of that regulatory scheme. (People v. Simon (1995) 9 Cal.4th 493 [37 Cal.Rptr.2d 278, 886 P.2d 1271].)
Here, the language of the statute itself does not explicitly require that any criminal intent or criminal negligence be shown. It simply states that it is unlawful for a person “to use a brand on cattle . . . unless the cattle are owned by him or he has been authorized by the owner of the cattle . . . ." (§ 20607.) Violation of the statute is a misdemeanor, not a felony. (§ 20221.)
If it were, necessary to prove that the misbrander intended to put his own brand on a calf that he knew was owned by another rancher, there would be little to distinguish this section from section 17551, which provides that it is unlawful to misbrand another person’s cattle with the “intent to steal.” Violation of section 17551 is a felony. (§ 17701.) Harmonizing the two sections, it appears that the Legislature intended to create the misdemeanor offense when it could not be shown that the misbranding was intentional, but intended to create the felony offense when it could be shown that the misbrander intended to brand another rancher’s calf as his own.
We recognize that section 20607 can be construed to require simply an intent to brand another’s calf, without requiring the further specific intent to steal required by section 17751. Such a technical distinction is of little or no practical value, however, for it is unlikely that anyone would ever want to brand another’s calf as his own unless he wanted to steal the calf.
Most important, section 20607 is part of a comprehensive legislative scheme to trace the ownership of cattle from birth to the slaughterhouse. In the cattle industry, thousands of cattle graze and intermingle upon thousands of acres of both public and private land. The whole regulatory plan depends on the security and reliability of the brand and the security of the ownership of the new, unbranded calves upon the state’s range lands. It seems apparent that the Legislature, in enacting section 20607 and providing a misdemeanor penalty therefor, sought to require persons in the cattle business to exercise diligence to be sure their branding crews take the trouble to identify the mothers of the unbranded calves before applying a brand.
Without strict criminal liability, there would be little or no incentive for the buckaroo crews to exercise any diligence to sort out the calves owned by another. The crews could simply gather as many cattle as possible, segregate the calves, and brand them all. Violation of the statute would be virtually *Supp. 8 impossible to prove, because it would be necessary to identify the particular cowboy who misbranded a particular calf and prove that, at the time, he actually knew it was another rancher’s calf. And even if the particular cowboy could be identified, only that cowboy would be responsible for the violation unless the brand owner could be shown to have “aided and abetted” the cowboy’s actions.
Without strict criminal liability, it would behoove the unscrupulous owner to be absent as much as possible during the branding operation so that it could never be shown that he ever actually knew his brand was being placed on another rancher’s calf. By such laxity, he would in effect acquire all of those misbranded calves that were weaned before the misbranding was discovered. Strict liability, on the other hand, forces the brand owner to make sure that his buckaroo crews identify the mothers of the unbranded calves before his brand is applied.
The policy underlying the statute is apparent from the arguments made in the cases before the court. Both appellants argue there is insufficient evidence to show that either of them actually knew of the misbranding or authorized the misbranding. They argue that there is no respondeat superior guilt in a criminal case, so the individual defendant’s criminal intent and knowledge must be shown. They argue that it is impossible to identify the particular cowboys who misbranded the 20 calves that are involved, and without such identification, it is impossible to determine if the defendants personally authorized the misbranding. If such contentions could provide a successful defense to a charge of misbranding under section 20607, the statute would become largely unenforceable, and much of the protection provided cattle owners by California’s comprehensive branding statutes would disappear.
The security of the title and ownership of cattle ranging freely and openly over thousands of acres requires that the brand owner be held responsible under section 20607 if his crews place his brand on calves that he does not in fact own.
We conclude that section 20607 does not require a showing that the person accused intended to brand another’s calf, and it does not require a showing that he knew it was another’s calf that was being branded. Moreover, under the statute, we hold that there is vicarious liability. That is, the rancher himself is guilty of a violation of the statute if one of his cowboys brands a calf that the rancher does not own. Such a construction will tend to ensure that the branding crews will take the trouble to “mother up” the *Supp. 9 calves and to sort out the calves owned by others before proceeding with the branding process.
This construction of the statute makes it unnecessary to consider the appellants’ various contentions of error. There is ample evidence in the record to support the juries’ findings that Casey’s buckaroo crews branded 10 calves belonging to other ranchers and that Roberts’s cowboys branded 10 calves belonging to Casey.
The orders granting probation in both cases are affirmed.
Settlemire, J., and Barclay, J., concurred.

Unless otherwise designated, all statutory sections referred to are in the Food and Agriculture Code.