Filed 1/25/21  Lewine v. BSI Financial Services CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| ROBERT LEWINE et al., | B293975 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC657255) |
| v. | |
| BSI FINANCIAL SERVICES et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara Marie Scheper, Judge.  Affirmed.

Law Offices of Steven Rein and Steven Rein for Plaintiffs and Appellants.

Blank Rome, Cheryl S. Chang and Jessica A. McElroy for Defendants and Respondents Wilmington Savings Fund Society FSB, as trustee and Servis One, Inc. d/b/a BSI Financial Services.

ZBS Law and Bradford E. Klein for Defendant and Respondent Zieve, Brodnax & Steele, LLP.

—————————————

Before us is an appeal by appellants Robert Lewine and Phyllis Katz-Lewine (the Lewines)[1] of the granting of a summary judgment motion after a property they held as joint tenants was sold at a foreclosure sale on April 4, 2017. The property was sold to pay off a loan that was secured by a deed of trust on the property. The Lewines sued Servis One, Inc., d/b/a BSI Financial Services (BSI), the servicer of the underlying loan; Wilmington Savings Fund Society, FSB, the beneficiary of the deed of trust (WSFS); and Zieve, Brodnax & Steele, LLP, the trustee on the deed of trust (ZBS) (collectively, respondents) on April 11, 2017, claiming that they violated Civil Code section 2923.6[2] by foreclosing on the property while a complete loan modification application was pending, and without complying with the notice and appeal provisions of section 2923.6.

Respondents countered that the Lewines' claim had abated because those appeal and notice provisions were repealed in 2018 and the Lewines' loan modification application was not complete. In 2018, the trial court agreed that the Lewines' claim had abated, granted summary judgment for respondents, and entered judgment terminating the action.

As set forth in our Discussion, we need not address the Lewines' appellate claim that a recent legislative amendment to section 2923.6 establishes that the abatement doctrine does not apply to their cause of action against respondents. This is because we agree with respondents' alternative argument that,

---

[1] For the sake of clarity, and meaning no disrespect, when we refer to Robert Lewine or Phyllis Katz-Lewine individually, we use their first names.

[2] Undesignated statutory citations are to the Civil Code.

2

even if the Lewines' claim under section 2923.6 had not abated, it fails as a matter of law because the Lewines' 2017 loan modification application was incomplete.  We thus affirm.

### FACTUAL AND PROCEDURAL BACKGROUND[3]

We summarize only those facts relevant to this appeal.

In 1976, Robert purchased the subject property in Los Angeles for approximately $78,500.  The Lewines held title to the subject property as joint tenants prior to the foreclosure.  In January 2007, Phyllis executed a promissory note for $1 million, which was secured by a deed of trust on the property.  In September or October 2012, Phyllis defaulted on the monthly payment obligations in breach of the note and deed of trust.

On February 10, 2015, the deed of trust was assigned to WSFS.  At an unspecified point in time, ZBS became the nonjudicial foreclosure trustee on the deed of trust.

On January 26, 2016, a notice of default and election to sell under deed of trust was recorded with the Los Angeles County Recorder's Office.  Between August 29, 2016 and September 11, 2016, " 'Phyllis[,] by and through her counsel of record[,] . . . submitted a loss modification application to the . . . Statebridge Company, LLC[,]' " which, at that time, was the servicer of the subject loan.  On August 30, 2016, a notice of trustee's sale was recorded with the Los Angeles County Recorder's Office.  On September 8, 2016, Statebridge informed

---

**3** Part of this summary is based on the undisputed portions of the trial court's order granting respondents' summary judgment motion.  (See *Baxter v. State Teachers' Retirement System* (2017) 18 Cal.App.5th 340, 349, fn. 2 [utilizing the summary of facts provided in the trial court's ruling].)

3

Phyllis that her application was incomplete. On September 16, 2016, Statebridge informed Phyllis that it had received a facially complete application from her. On October 20, 2016, "Statebridge 'addressed a letter to Phyllis . . . substantively denying her . . . application due to insufficient income and excessive liens on the Subject Property.' "

On October 25, 2016, BSI took over servicing of the loan. On November 16, 2016, Phyllis appealed Statebridge's denial of her application to BSI. On December 22, 2016, BSI determined that the appeal was incomplete and requested additional documents. The Lewines thereafter submitted additional documents but, on February 15, 2017, BSI advised the Lewines that it " 'require[d] a new completed loan modification application and supporting documents by or before March 2, 2017[,]' " and BSI stated that it "would postpone the sale date by 45 days to allow for this review."

On March 1, 2017, BSI received a loan modification application from the Lewines. On March 2, 2017, BSI wrote Phyllis a letter notifying her that the loan modification application was denied because it was incomplete. The Lewines deny having received this letter until after the foreclosure sale, which occurred on April 4, 2017. Although the Lewines claim they belatedly received this letter "because it was addressed to Phyllis but mailed to [the Lewines' counsel's] address," their appellate briefing does not explain how or precisely when they actually received the letter.

On April 11, 2017, the Lewines filed a verified complaint against respondents. The verified complaint stated that "[the Lewines] are informed and believe and thereon allege that in foreclosing on the property, [respondents] violated §2923.6(c) . . .

4

in that, at the time of the sale, [the Lewines] had submitted a complete loan modification application which was under consideration and had not been denied, nor had [respondents] complied with any of the denial and appeal provisions of that section." The Lewines sought "all available relief under C.C. §2924.12, including injunctive relief to stop the recordation of the Trust Deed on Sale if it has not been recorded, an order rescinding the sale, and/or damages."

On May 25, 2017, BSI and WSFS filed a verified answer. ZBS filed a verified answer on August 29, 2017.

On February 7, 2018, respondents moved for summary judgment or, in the alternative, summary adjudication. Respondents contended, inter alia, that the Lewines could not establish that they violated section 2923.6 because the Lewines' March 1, 2017 submission was not a complete application for a loan modification.

On April 10, 2018, the Lewines opposed the motion.

On April 19, 2018, respondents filed a reply in support of their motion, wherein they argued that the Lewines' claim under section 2923.6 abated because the statutory provisions affording borrowers the right to appeal denials of loan modification applications were repealed effective January 1, 2018 without a savings clause. On May 4, 2018, the Lewines filed a surreply brief addressing that issue.

On May 9, 2018, the trial court heard respondents' summary judgment motion and agreed with respondents that the Lewines' cause of action had abated: "The Legislature chose not to include a savings clause and this indicates a willingness to terminate any pending claims." The trial court thus issued an order granting the motion. On July 18, 2018, the trial court

5

entered judgment in favor of respondents, and respondents served notice of entry of judgment on the Lewines on August 17, 2018.  On October 11, 2018, the Lewines appealed the judgment.

## STANDARD OF REVIEW

" 'We review the ruling on a motion for summary judgment de novo, applying the same standard as the trial court.' [Citation.]  'Summary judgment is appropriate only "where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law." ' [Citation.]" (*Barenborg v. Sigma Alpha Epsilon Fraternity* (2019) 33 Cal.App.5th 70, 76.)  "Under summary judgment law, ' "[t]here is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." [Citation.]' " (*Lares v. Los Angeles County Metropolitan Transportation Authority* (2020) 56 Cal.App.5th 318, 331–332.)

" ' "[D]e novo review [of an order granting summary judgment] does not obligate us to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues.  As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority.  In other words, review is limited to issues which have been adequately raised and briefed." ' [Citation.]" (See *Los Angeles Unified School Dist. v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 492 (*Los Angeles Unified School Dist.*).)

6

"We affirm the trial court's decision [granting a summary judgment motion] if it is correct on any ground the parties had an adequate opportunity to address in the trial court, regardless of the reasons the trial court gave."  (See *Jameson v. Pacific Gas & Electric Co.* (2017) 16 Cal.App.5th 901, 909 (*Jameson*).)

## DISCUSSION

As far as we can discern, the Lewines contend on appeal that:  (1) Because the Legislature reenacted in 2019 the very provisions of section 2923.6 it had repealed in 2018, "the claims abatement logic" upon which the lower court relied was erroneous; (2) BSI is estopped to deny that it is "bound by the mandates of §2923.6 as it existed at the time of the operative facts in this case, particularly the appeal rights provisions"; and (3) the authorities upon which respondents relied during the proceedings below did not establish that the abatement doctrine applies to the instant case.

Respondents disagree with each of these contentions, and assert, as they did before the trial court, that the Lewines' loan modification application was not complete.  Under the respondents' theory, the Lewines were not entitled to section 2923.6's protections even if the Lewines' claim had not abated.[4]

For the reasons discussed below, we agree that the Lewines' failure to submit a complete loan modification application is fatal to their sole cause of action under section 2923.6.  (See *Jameson*, *supra*, 16 Cal.App.5th at p. 909

---

[4]  We observe that because the Lewines failed to file a reply brief, they did not respond to the potential alternative bases for affirmance raised in the respondents' brief.

[noting that a reviewing court may affirm an order granting summary judgment "on any ground the parties had an adequate opportunity to address in the trial court"].)

## A. The Reenactment in 2019 of the Appeal and Notice Provisions that Existed in 2017 and the Legislature's Expression of Intent

Before turning to the merits of the appeal, we observe the Lewines are correct that in 2019, the Legislature did indeed reenact appeal and notice provisions that are virtually identical to those in the version of section 2923.6 that existed in 2017, and that were repealed in 2018, albeit briefly as it turned out.

More specifically, Senate Bill No. 818 reenacted the substance of the pre-January 1, 2018 version of section 2923.6, and those reenacted provisions went into effect on January 1, 2019. (Compare Stats. 2012, ch. 87, § 7 [Senate Bill No. 900, which added the version of section 2923.6 that was effective until January 1, 2018], with Stats. 2018, ch. 404, § 7 [Senate Bill No. 818, which reenacted the substance of the pre-January 1, 2018 version of section 2923.6].) After the passage of Senate Bill No. 818, subdivisions (c) through (g) of section 2923.6 now read as follows:

> (c) If a borrower submits a complete application for a first lien[5] loan modification offered by, or through, the borrower's mortgage servicer at least five business days before a scheduled foreclosure sale, a mortgage servicer, mortgagee, trustee, beneficiary, or

---

[5] " 'First lien' means the most senior mortgage or deed of trust on the property that is the subject of the notice of default or notice of sale." (§ 2920.5, subd. (d).)

8

authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending.  A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs:

(1)  The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.

(2)  The borrower does not accept an offered first lien loan modification within 14 days of the offer.

(3)  The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification.

(d)  If the borrower's application for a first lien loan modification is denied, the borrower shall have at least 30 days from the date of the written denial to appeal the denial and to provide evidence that the mortgage servicer's determination was in error.

(e)  If the borrower's application for a first lien loan modification is denied, the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or, if a notice of default has already been recorded, record a notice of sale or conduct a trustee's sale until the later of:

9

(1)  Thirty-one days after the borrower is notified in writing of the denial.

(2)  If the borrower appeals the denial pursuant to subdivision (d), the later of 15 days after the denial of the appeal or 14 days after a first lien loan modification is offered after appeal but declined by the borrower, or, if a first lien loan modification is offered and accepted after appeal, the date on which the borrower fails to timely submit the first payment or otherwise breaches the terms of the offer.

(f)  Following the denial of a first lien loan modification application, the mortgage servicer shall send a written notice to the borrower identifying the reasons for denial, including the following:

(1)  The amount of time from the date of the denial letter in which the borrower may request an appeal of the denial of the first lien loan modification and instructions regarding how to appeal the denial.

(2)  If the denial was based on investor disallowance, the specific reasons for the investor disallowance.

(3)  If the denial is the result of a net present value calculation, the monthly gross income and property value used to calculate the net present value and a statement that the borrower may obtain all of the inputs used in the net present value calculation upon written request to the mortgage servicer.

(4)  If applicable, a finding that the borrower was previously offered a first lien loan modification and failed to successfully make payments under the terms of the modified loan.
(5)  If applicable, a description of other foreclosure prevention alternatives for which the borrower may be eligible, and a list of the steps the borrower must take in order to be considered for those options.  If the mortgage servicer has already approved the borrower for another foreclosure prevention alternative, information necessary to complete the foreclosure prevention alternative.

(g)  In order to minimize the risk of borrowers submitting multiple applications for first lien loan modifications for the purpose of delay, the mortgage servicer shall not be obligated to evaluate applications from borrowers who have been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this section, unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer.[6]

---

**6**  This statutory text is identical to the version of subdivisions (c) through (g) that was in effect prior to January 1, 2018, except the pre-January 1, 2018 version of subdivision (c) did not specify that the application must be submitted at least five business days before a scheduled

(Stats. 2018, ch. 404, § 7.)

The Legislature stated the following in section 26 of Senate Bill No. 818: "It is the intent of the Legislature that any amendment, addition, or repeal of a section or part of a section enacted by Senate Bill 900 [(which added the pre-January 1, 2018 version of section 2923.6)] . . . that took effect as of January 1, 2018, *shall not have the effect to release, extinguish, or change, in whole or in part, any liability that shall have been incurred under that section, or part of a section, prior to January 1, 2018*, unless the amendment, addition, or repeal expressly so provides. The section, or part of a section, that was amended, added, or repealed *shall be treated as still remaining in force* for the purpose of sustaining any proper action, suit, or proceeding for the enforcement of such a liability, as well as for the purpose of sustaining any judgment, decree, or order." (See Stats. 2018, ch. 404, § 26, italics added.)

Even though this provision arguably expresses the Legislature's intent to revive a claim like the Lewines' cause of action under section 2923.6, the parties fail to discuss section 26 at all in their briefing. We do not discuss it further because the Lewines' cause of action would fail even if the abatement doctrine did not apply to their claim.

---

foreclosure sale, and certain minor modifications have been made to the current version of subdivision (g) that are not relevant here. (See Stats. 2012, ch. 87, § 7.)

**B.** **The Lewines' Loan Modification Application Was Incomplete and the Notice and Appeal Provisions of the Current and Pre-January 1, 2018 Versions of Section 2923.6 Do Not Apply to Incomplete Loan Modification Applications**

As set forth in the Factual and Procedural Background, on February 15, 2017, BSI advised the Lewines that it needed them to submit a new loan modification application and supporting documents by March 2, 2017. The Lewines do not contend that this request was improper. Rather, they complain that BSI thereafter foreclosed on their property without informing them "in what respect [their loan modification application] was incomplete; without advising them of their appeal rights as required by C.C. §2923.6(e); and without giving them 30 days to appeal, plus 15 additional days, as required by C.C. §2923(e)."**7**

---

**7** To the extent that the Lewines intended to proceed on any other theory (e.g., respondents foreclosed on the property when an *appeal* of a loan modification application—and not a loan modification *application itself*—was pending), they have failed to articulate clearly any such theory on appeal. (See *Los Angeles Unified School Dist.*, *supra*, 57 Cal.App.5th at p. 492 [" ' "As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority." ' "]; *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 (*Cahill*) [" 'Appellate briefs must provide argument and legal authority for the positions taken. . . . The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.' "].)

Under the version of section 2923.6 that was in effect prior to January 1, 2018 and the version that is currently operative, a borrower is entitled to written notice of a denial of a loan modification application and an appeal therefrom only if the borrower has submitted a *complete* application. Subdivision (c) of the statute prescribes the legal consequences that follow "[i]f a borrower submits a complete application for a first lien loan modification" (e.g., a trustee's sale shall not be conducted during the pendency of the application), and subdivisions (d), (e), and (f) of the statute afford notice and appellate rights to "the borrower." (See § 2923.6, subds. (c)–(f).) Given the text (i.e., subdivisions (d)'s, (e)'s, and (f)'s placement of the definite article "the" before "borrower") and the structure of these four provisions (i.e., subdivisions (d), (e), and (f) follow subdivision (c)), it is apparent that subdivisions (c), (d), (e), and (f) all confer rights to the same borrower—to wit, the borrower who has submitted a complete loan modification application.[8]

---

[8] (See *People v. Chevron Chemical Co.* (1983) 143 Cal.App.3d 50, 54 [" '[A] statute should be construed with reference to the entire statutory system of which it forms a part in such a way that harmony may be achieved among its parts. . . .' "]; cf. *Pineda v. Bank of America, N.A.* (2010) 50 Cal.4th 1389, 1396–1397 ["Use of the indefinite articles 'a' or 'an' signals a general reference, while use of the definite article 'the' (or 'these' in the instance of plural nouns) refers to a specific person, place, or thing. [Citation.] . . . [H]ad the Legislature used the definite article 'the' before 'action for the wages,' as in 'suit may be filed for these penalties at any time before the expiration of the statute of limitations on *the* action for the wages from which the penalties arise,' it would suggest the Legislature was referring to a specific suit for unpaid final wages filed by an employee who seeks section 203 penalties as well."].)

14

Furthermore, several federal district courts have arrived at the same conclusion, that is, a borrower is entitled to these notice and appeal rights only if he or she has submitted a complete application.[9] In fact, the Lewines conceded during the proceedings below and before our court that *Rocha* stands for this proposition, yet they do not contend that *Rocha* was wrongly decided.

"For purposes of [section 2923.6], an application shall be deemed 'complete' when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer." (See § 2923.6, subd. (h); Stats. 2012, ch. 87, § 7 [pre-January 1, 2018 version of § 2923.6, subd. (h), which is identical to the current version of that provision].) In a February 15, 2017

---

[9] (See *Penermon v. Wells Fargo Bank, N.A.* (N.D.Cal. 2014) 47 F.Supp.3d 982, 998–999 [granting a motion to dismiss the plaintiff's claim that the defendant failed to provide her with a written denial or allow her to appeal the denial of her application because she "fail[ed] to clearly plead that [her] application as submitted was complete as required by" section 2923.6; *Rocha v. CIT Bank, N.A.* (N.D.Cal., Apr. 3, 2018) [2018 U.S. Dist. Lexis 57671, at p. *25] [nonpub. opn.] (*Rocha*) ["Without a complete application, [the defendant-bank] had no obligation to review Plaintiffs' loan modification application, and it was neither obligated to provide a written denial as required by the statute nor impeded from proceeding with a foreclosure sale."].) We may consider *Rocha* because, " '[a]lthough we may not rely on unpublished California cases, the California Rules of Court do not prohibit citation to unpublished federal cases, which may properly be cited as persuasive, although not binding, authority.' [Citation.]" (*Herpel v. County of Riverside* (2020) 45 Cal.App.5th 96, 122, fn. 25.)

letter, BSI asked the Lewines to submit several documents in support of their new loan modification application within 15 days, including a "pension benefit statement."  Included in the Lewines' March 1, 2017 submission of documents to BSI is a letter from Phyllis in which she stated that "[she] can't find [her] SAG pension benefit statement," and claimed that "[t]he monthly payment received is highlighted on [her] U.S. Bank statements." Absent from the Lewines' briefing is any argument that 15 days was not a reasonable timeframe in which they could obtain the missing pension benefit statement, nor is it apparent that this deadline was unreasonable.  Absent also from the Lewines' briefing is any explanation why a line item on a bank statement is equivalent to a representation *from the union* (SAG) about the amount of Phyllis's pension income, especially where it is common sense that this information would be necessary to evaluate Phyllis's ability to pay a modified loan.

It follows that no reasonable trier of fact could find that the Lewines' March 1, 2017 loan modification application was complete for the purposes of section 2923.6.  Because the Lewines' sole cause of action under section 2923.6 fails as a matter of law, the trial court did not err in granting respondents' motion for summary judgment.[10]  (See Code Civ. Proc., § 437c,

---

[10] When the Lewines submitted their loan modification application on March 1, 2017, section 2924.10, subdivision (a) obligated BSI to provide "written acknowledgment of the receipt" of "any document in connection with a first lien modification application" within five business days of receiving it; that written acknowledgment needed to identify "[a]ny deficiency in the borrower's first lien loan modification application."  (See Stats. 2012, ch. 87, § 13.)  Much like the provisions of section 2923.6 discussed in this opinion, section 2924.10 was repealed as of

16

subd. (c) ["The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."].)

---

January 1, 2018, and reenacted effective January 1, 2019. (See Stats. 2012, ch. 87, § 13; Stats. 2018, ch. 404, § 13.)

The Lewines did not allege in their complaint that respondents violated section 2924.10, nor do they argue on appeal that BSI failed to comply with this statute after the Lewines submitted their loan modification application on March 1, 2017. Thus, we need not decide whether the Lewines could have obtained relief for a violation of section 2924.10. (See *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1253 [" 'To create a triable issue of material fact, the opposition evidence must be directed to issues raised by the pleadings. [Citation.] If the opposing party's evidence would show some factual assertion, legal theory, defense or claim not yet pleaded, that party should seek leave to amend the pleadings before the hearing on the summary judgment motion. [Citations.]' "]; *Cahill*, *supra*, 194 Cal.App.4th at p. 956 [" 'We are not bound to develop appellants' arguments for them. [Citation.]' "].)

## DISPOSITION

The judgment is affirmed. Respondents Servis One, Inc. d/b/a BSI Financial Services; Wilmington Savings Fund Society, FSB; and Zieve, Brodnax & Steele, LLP are awarded their costs on appeal.

NOT TO BE PUBLISHED.

BENDIX, Acting P. J.

We concur:

CHANEY, J.

FEDERMAN, J.*

---

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.