[Crim. No. 1323.   First Appellate District, Division Two.—May 17, 1926.]

In the Matter of the Application of JAMES A. MAKINGS for a Writ of Habeas Corpus.

[1] CRIMINAL LAW—RESTRICTIONS ON TAKING, SALE, AND TRANSPORTATION OF CRABS—SPECIAL LEGISLATION.—Section 628 of the Penal Code, relating to the taking, sale, and transportation of crabs, does not directly confer any right or any privilege on anyone, although indirectly it confers on all manner of men without limitation the privilege of taking crabs in the seven districts named and the privilege of transportation as therein specified; and such local and special legislation on that subject is expressly authorized by section 25½ of article IV of the constitution.

[2] ID.—SPECIAL LEGISLATION—CONSTITUTIONAL LAW.—Even before the adoption of section 25½ of article IV of the constitution all local and special legislation was not prohibited, but it was permissible to adopt any classification resting on any natural, intrinsic, or constitutional distinction.

[3] ID.—CONSTITUTIONAL LEGISLATION—PRESUMPTION.—Every presumption is to the effect that a statute is valid, and the court should not declare a statute unconstitutional unless it can be said of the statute that it positively and certainly is opposed to the constitution.

[4] ID.—EQUALITIES OF CONSTITUTION.—The equality of the constitution is the equality of persons, and not of places, the equality of right, and not of enjoyment, and a law that confers equal rights on all citizens of the state, or subjects them to equal burdens, and inflicts equal penalties on every person who violates it, is an equal law.

[5] ID.—OWNERSHIP OF CRABS—DESTRUCTION OF RIGHT OF PROPERTY.—While section 628 of the Penal Code by implication grants certain rights, and it grants limited rights to take certain crabs in certain waters, the ownership is in the people of the state and, therefore, the prohibitions and restrictions contained in that statute do not destroy a right of property.

(1) 36 Cyc., p. 997, n. 8.   (2) 36 Cyc., p. 992, n. 91.   (3) 12 C. J., p. 794, n. 23, p. 795, n. 33.   (4) 12 C. J., p. 1145, n. 6, p. 1147, n. 7, 10, p. 1150, n. 36; 26 C. J., p. 625, n. 9, p. 632, n. 70 New.   (5) 26 C. J., p. 623, n. 92.

2.   See 5 Cal. Jur. 793.
3.   See 5 Cal. Jur. 628; 6 R. C. L. 97.
4.   See 5 Cal. Jur. 824; 6 R. C. L. 376.

PROCEEDING in Habeas Corpus to secure the release of petitioner from custody on a charge of unlawfully transporting crabs. Writ denied and petitioner remanded.

The facts are stated in the opinion of the court.

Puter & Quinn and Marc F. Morrison for Petitioner.

B. D. Marx Green for Respondent.

Ralph W. Scott for State Fish and Game Commission.

STURTEVANT, J.—This is an application for a writ of *habeas corpus.* The petitioner is held by the constable of Sausalito township, county of Marin, under a warrant of arrest issued out of the justice's court of said township by virtue of a complaint filed in said court which charges that on the twelfth day of March, 1926, the petitioner " . . . did then and there wilfully and unlawfully transport and carry crabs from the Fish and Game District No. 1½ to the County of Marin, State of California. . . . " The petitioner asserts the complaint is based on section 628 of the Penal Code, subdivision "c" (Stats. 1925, p. 456) thereof, and that such portion of the statute is unconstitutional because it is discriminatory. In this connection the petitioner earnestly contends that "if crabs are caught in any one of said districts then any of the other six districts has and enjoys the right and privilege of having said crabs shipped into it, sold to, purchased by, and consumed by the residents of such district. . . . Each of these particular seven districts enjoys privileges in regard to crabs caught in any one of this group of seven which are not enjoyed or possessed by the other fifty-three (53) fish and game districts. . . . Crabs caught in District No. 5 can be shipped into District No. 1½ and bought and consumed by its people but the people residing in District No. 1 have no such privilege."

[1] Section 628 of the Penal Code (1) prohibits the taking at any time of crabs less than seven inches in diameter measured across the back; (2) the taking of any female crab; (3) the taking, between July 31st and November 14th, of any crab excepting imported crabs; (4) the sale of crab meat not in the shell; (5) or the bringing to shore of any portion of

any crab without the remaining portions showing its size; and then it provides: " (c) Every person who ships or offers for shipment or who transports or carries any species of crab from fish and game districts one and one-half, five, six, seven, seven 'A,' eight and nine, either to a point outside of the state or into any part of the state other than in districts one and one-half, five, six, seven, seven 'A,' eight and nine, or who holds any crabs in live cars within said fish and game districts, is guilty of a misdemeanor.

"For the purposes of this act a live car shall be any box, crate or pen in which live crabs are kept."

It will be noted at once that the statute does not directly confer any right or any privilege on anyone. Indirectly it confers the privilege of taking crabs in the seven districts named and the privilege of transportation as therein designated. Those privileges are conferred on all manner of men without limitation as to the residence, citizenship, color, or age of the person doing the taking. It is local and special legislation. But local and special legislation is expressly authorized on the subject. (Sec. 25½, art. IV, Const.) [2] Even before that section was adopted all local and special legislation was not prohibited. If the classification adopted rests on any natural, intrinsic or constitutional distinction it is permissible. Looking at the entire statute it is clear that it was enacted for the purpose of preventing crabs from being totally destroyed. If we assume it is a fact that in the waters located in the seven districts crabs may be found in large quantities, then we may further assume that no one will engage in transporting large quantities of crabs from one place to another place where the same large quantities of crabs are to be found, and we may further assume that the supply of crabs will not be materially lessened by such restricted limitations. If we are otherwise in doubt and such assumptions will sustain the constitutionality of the statute, we must further assume that the legislature heard and determined the facts before it enacted the statute and that it found that the facts existed which were necessary to sustain the statute. (*Galeener* v. *Honeycutt,* 173 Cal. 100, 104 [159 Pac. 595].) [3] Every presumption is to the effect that the statute is valid. (*Macmillan* v. *Clarke,* 184 Cal. 491, 496 [71 A. L. R. 288, 194 Pac. 1030].) We should not declare a statute unconstitutional unless it can be said

of the statute that it positively and certainly is opposed to the constitution. (*San Francisco* v. *Industrial Acc. Com.,* 183 Cal. 273, 279 [191 Pac. 26].) In the case of *In re Marincovich,* 48 Cal. App. 474, at page 482 [192 Pac. 156, 159], the court quotes with approval: " 'The statute makes no discrimination. . . . Everybody is prohibited.' True it is that the prohibition affects some more than others. 'Such is necessarily the effect of all restrictive laws. . . . [4] The equality of the constitution is the equality of persons, and not of places,—the equality of right, and not of enjoyment. A law that confers equal rights on all citizens of the state, or subjects them to equal burdens, and inflicts equal penalties on every person who violates it, is an equal law.' "

[5] We have proceeded as above in reply to the points made by the petitioner. However, it is not clear to us how, in the light of the decisions of this state, that the point discussed is presented by a consideration of the statute in question. The statute expressly prohibits certain acts and by implication grants other rights. It grants limited rights to take certain crabs in certain waters. Theretofore the ownership was in the people of the state. In the case entitled *Ex parte Kennke,* 136 Cal. 527, at page 529 [89 Am. St. Rep. 177, 69 Pac. 261], Mr. Justice McFarland, speaking for the court, quoted with approval as follows: "This being so, it necessarily followed that the legislature had the right to permit persons to kill or take game upon such terms and conditions as its wisdom might dictate, and that the person killing game might have such property interest in it, and such only, as the legislature might confer. The legislature has never conferred an absolute property in quail upon the person who might kill the same. The killing of quail during the months of October and November was permitted, not for sale,—not to go upon the market as an article of commerce,—but for the mere use of the person who killed the birds. The person killing quail under this statute has but a qualified property in the birds after they are killed. He may consume them. If a trespasser should take them from him, he might maintain an appropriate action to regain the possession. But the law which authorized him to kill the quail has withheld the right to sell or the right to ship for the purpose of sale, and when such person undertakes to ship for sale he is undertaking to assert

a right not conferred by law. The act, therefore, does not destroy a right of property, because no such right exists." That case has been cited and followed in later cases. (*Paladini* v. *Superior Court,* 178 Cal. 369, 371 [173 Pac. 588].)

The writ is denied and the petitioner is remanded.

Nourse, J., and Langdon, P. J., concurred.