Filed 8/21/13

**CERTIFIED FOR PUBLICATION**

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

**APPELLATE DIVISION**

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>    Plaintiff/Respondent,<br><br>vs.<br><br>TIM LEE ESTES,<br><br>    Defendant/Appellant. | Appellate No. APP-12-007357<br><br>Court No. 11031999<br><br>**FINAL JUDGMENT ON APPEAL** |

This matter came on for hearing on May 10, 2013. After considering the evidence, arguments, and applicable law, on July 23, 2013 we issued a judgment affirming-in-part and reversing-in-part the trial court's judgment. Pursuant to California Rule of Court 8.888, we then modified that judgment to add the below "Introduction" and "Factual Background" sections to the original text, in preparation for publication of this final judgment.

**INTRODUCTION**

Tim Lee Estes appeals after having been found strictly liable on a charge of violating California Fish and Game Code § 8278(a) for the taking of undersized Dungeness crabs, and sentenced to a probationary term with fines, fees and penalties, and the forfeiture of $47,000. On

1

appeal, Estes asserts two bases of reversible error: 1) the trial court ruled and instructed the jury that a charge of violating § 8278(a) is a strict liability offense not requiring criminal intent or criminal negligence; and 2) the forfeiture in the amount of $47,000 from the proceeds of his legal Dungeness crab catch constitutes an excessive fine in violation of the Eighth Amendment to the United States Constitution.

In this case of first impression as to the mental state required to prove a misdemeanor violation of § 8278(a), we hold that the trial court properly determined the taking of undersized Dungeness crabs in violation of this section to be a public welfare offense not requiring proof of a *mens rea*. However, we also hold that under the circumstances of this case, the $47,000 forfeiture was excessive and disproportionate to the harm Estes caused in violation of the Eighth Amendment.

**FACTUAL BACKGROUND**

Estes is a commercial fisherman who has operated a commercial crab boat for twenty-one years. During the 2010-2011 Dungeness crab season Estes owned and operated the commercial fishing vessel, JesAn.

As captain, Estes navigates the vessel from the wheelhouse which is located one level up from the deck where the crab are measured on a sorting table by the crew. Although he has installed a camera to communicate with the crew, Estes is unable to personally observe the measurement of the crabs while directing the placement of the crab pots and navigating the vessel. Estes does instruct the crew on the proper measurement of crab and requires each crew member to sign a contract which contains a provision that the crew member is liable for all fines and penalties associated with the taking of undersized crab. The crew members are also

provided with gauges to measure the crabs and an experienced crew member supervises the crew.

On the morning of November 23, 2010, Estes and his crew offloaded their crab harvest for the JesAn at Caito Fisheries on Pier 45 in the City and County of San Francisco. Wardens Bryan Patrick and William O'Brien of the California Department of Fish and Game arrived to inspect the JesAn and its crab harvest. Warden Patrick inspected the commercial fishing licenses issued to Estes and his crew, Estes' Dungeness crab permit and the boat registration for the JesAn, all of which were found to be in order.

Meanwhile, O'Brien made a brief inspection of the crab catch and found some "short" crabs. Section 8278 prohibits the taking of any Dungeness crab less than six and one-quarter inches in breadth, except that no more than one percent of the load of Dungeness crabs may be less than six and one-quarter inches in breadth, but not less than five and three-quarters in breadth.[1] Patrick joined O'Brien to look at the catch and the wardens found an uncommonly high percentage of illegal crabs. Based on these initial findings, Patrick and O'Brien determined that they would need to check the entire load and called in additional wardens to assist in measuring over 40,000 pounds of crab. Estes was cooperative and assisted the wardens by providing them with the gauges to measure the crabs. Ultimately, the wardens determined that 991 pounds of the total load of 44,943 pounds, or approximately 2.2 percent of the total load, was undersized. The undersized crabs were returned to the San Francisco Bay. Estes was cited for possession of a load containing more than one percent undersized Dungeness crab. The

---

[1] Fish and Game Code § 8278 reads in its entirety: "(a) Except as otherwise provided, no Dungeness crab less than six and one-quarter (6 ¼) inches in breadth, and no female Dungeness crab, may be taken, possessed, bought, or sold, except that not more than 1 percent in number of any load or lot of Dungeness crabs may be less than six and one-quarter (6 ¼) inches in breadth but not less than five and three-quarters (5 ¾) inches in breadth.
(b) Dungeness crab shall be measured by the shortest distance through the body from edge of shell to edge of shell directly from front of points (lateral spines)."

3

wardens sold the remaining 43,952 pounds of legal crabs at market rate as required by Fish and Game Code § 12160. The net total of this sale, in the amount of $75,962.24, was placed in the Fish and Game Preservation Fund.

In the trial that followed, the parties briefed the court and argued the mental intent required to show a misdemeanor violation of § 8278(a). Relying on the discussion and holding of the California Supreme Court in *People v. King* (2007) 38 Cal.4th 617, the trial court determined the statute to state a public welfare crime in that its purpose is to protect the health and safety of the public. As such the trial court found the statute to be primarily regulatory in nature, and not one for punishment or correction, and, therefore, strict liability is the appropriate standard. Accordingly, the trial court instructed the jury that the misdemeanor charge of violating Fish and Game Code § 8278(a) is a strict liability crime using CALCRIM instruction 254. On March 15, 2012, the jury returned a verdict of guilty for this charge. Thereafter, on April 20, 2012, the trial judge sentenced Estes to a suspended sentence of three years unsupervised probation, a fine in the amount of $1,000, plus the mandatory fines, fees and penalties, and also forfeiture of $47,000.[2]

## DISCUSSION

### A. Strict Liability

The language of Fish and Game Code § 8278 does not indicate what culpable mental state the statute requires. However, as the California Supreme Court in *People v. King, supra,* 38 Cal.4th at 623, noted the fact that no mental state is specifically mentioned does not mean that the legislature did not intend to require one. Citing *In re Jorge M.* (2000) 23 Cal.4th 866, 872, the court notes that "[a]s a general rule, no crime is committed unless there is a union of act and

---

[2] Estes' profit for the trip was approximately $48,000; thus, the $47,000 forfeiture effectively took Estes' entire profit.

4

either wrongful intent or criminal negligence." (*King* (2007) 38 Cal.4th at 623.)

Notwithstanding this general rule, certain crimes, which are purely regulatory in nature, do not require any proof of criminal intent for a violation. (*Id.*) Rather, one may be strictly liable upon the mere proof that a violation occurred and the person was the one responsible for the violation. Such crimes are denominated "public welfare offenses" in that they are purely regulatory in nature and seek to protect the health and safety of the public. (*Id.*) In the words of the California Supreme Court,

> [Public welfare] offenses usually involve light penalties and no moral obloquy or damage to reputation. Although criminal sanctions are relied upon, the primary purpose of the statutes is regulation rather than punishment or correction. The offenses are not crimes in the orthodox sense, and wrongful intent is not required in the interest of enforcement.

(*Id.*, citing *People v. Coria* (1999) 21 Cal.4th 868, 877.)

Public welfare offenses have been roughly classified to include violations of general police regulations, passed for the safety, health or well-being of the community. (1 Witkin, CALIFORNIA CRIMINAL LAW 4th (2012) Elements, § 18, p. 287, citing *Morissette v. United States* (1952) 342 U.S. 246.) The penalties imposed for violations of the offense are an indication of legislative intent: if the penalties prescribed are light, misdemeanor penalties, strict liability is more likely. (*People v. Casey* (1995) 41 Cal.App.4th Supp. 1, 6-7.)

Based on these considerations, the trial court properly determined that § 8278 constitutes a public welfare offense and that strict liability applies. First, the purpose of the statute appears to be primarily regulatory. As the People point out, the Legislature included statements in support of this finding in the statutory scheme:

5

The Legislature finds and declares that the Dungeness crab fishery is important to the state because it provides a valuable food product, employment for those persons engaged in the fishery, and economic benefits to the coastal communities of the state

(Fish & G. Code § 8280(a); see also *In re Makings* (1926) 78 Cal.App. 58, 61 [interpreting in dicta an earlier version of § 8278 as follows: "The statute expressly prohibits certain acts and by implication grants…limited rights to take certain crabs in certain waters. Theretofore the ownership was in the people of the state"].)  This express intent behind the statutory scheme related to the Dungeness fishery indicates that the scheme is designed to regulate and protect the fishery and its economic benefits to the state, rather than to punish violators.  Though, as Estes claims, the statute does not concern issues endangering public safety, the breadth of the case law defining public welfare offenses indicates that public welfare offenses are not so limited in definition.

In addition, as a regulatory crime, there appears to be little risk to Estes' reputation from his conviction.  There is no evidence in the record that his fishing business has been unduly prejudiced since his conviction, nor is there indication that he has incurred other "reputational" penalties, such as losing his fishing license or being unable to sell his subsequent catch.

The statutory penalty for violating § 8278 also weighs in favor of applying strict liability. A violation is punishable as a misdemeanor, subject to a maximum fine of $1,000 and a maximum jail term of six months.  (Fish & G. Code §§ 12000 and 12002.)

Finally, another factor also weighs in favor of applying strict liability to Estes' offense. In considering the issue, the California Supreme Court has assessed the difficulty prosecutors would have in proving a mental state for the crime—"The greater the difficulty, the more likely it is that the legislature intended to relieve the prosecution of that burden so that the law could be effectively enforced." (*In re Jorge M.* (2000) 23 Cal.4th 866, 873, citing 1 LaFave & Scott, SUBSTANTIVE CRIMINAL LAW (1986) § 3.8(a), pp. 342-344.)  Here, the People persuasively argue

that it would be exceedingly difficult for the prosecution to prove that a defendant accused of violating § 8278 had the requisite *mens rea*. In situations like the Dungeness fishery, we agree with the People that "there would be little or no incentive for the crews to exercise any diligence in sorting through their catch" were a culpable mental state required. Instead, fishing crews would have an incentive toward ignorance: crew members would be wise not to measure the crabs at all and a shrewd captain would never leave his or her wheelhouse to ensure that crabs were not undersized. Indeed, it is the crew members, including captains like Estes, who are in the best position to ascertain the true facts prior to inspection, for they have the only access to their catch prior to docking. As described in *Jorge M.,* these two factors favor lightening the burden on the prosecution and assigning fault to Estes for not knowing of his violation. Strict liability is the only means by which the intent of this law can be effectively implemented.

The trial court did not err in determining § 8278(a) to be a strict liability statute.

### B.    Excessive Forfeiture

While we hold that the trial court correctly applied strict liability to Estes' offense, we find incongruous with strict liability the court's sentencing order requiring Estes to forfeit $47,000 in proceeds from his legal Dungeness catch.

The question of whether a fine is constitutionally excessive is subject to de novo review, whereby the reviewing court must compare the amount of the forfeiture to the gravity of the defendant's offense. (*U.S. v. Bajakajian* (1998) 524 U.S. 321, 336-37.) The Eighth Amendment of the U.S. Constitution and Art. I, § 17 of the California Constitution both prohibit imposition of "excessive fines." (3 Witkin, CALIFORNIA CRIMINAL LAW 4th (2012) Punishment, § 193, p. 326.) Forfeitures (payments in kind) are "fines" if they constitute punishment for an offense, even if they serve some other remedial purpose. (*Bajakajian* (1998) 524 U.S. at 328.)

A forfeiture constitutes an unconstitutional fine in violation of the Eighth Amendment if the amount of the forfeiture is grossly disproportionate to the gravity of the defendant's offense. (*Bajakajian* (1998) 524 U.S. at 336-7.) In determining whether or not a forfeiture is grossly disproportionate, the court may look to four factors: (1) the nature and extent of the crime, (2) whether the violation was related to other illegal activities, (3) the other penalties that may be imposed for the violation, and (4) the extent of the harm caused. (*Id.* at 337-340.)

In the case before this Court, it is clear that the trial court had statutory authority to order the forfeiture as part of the punishment. (Fish and G. Code §§ 12159 and 12160.) The mandatory language of the statutes is such that the legislative intent is unambiguous that the forfeiture constitutes punishment to violators. Although the statutory scheme has a remedial component (the proceeds from the forfeiture are deposited with, and presumably benefit, the Fish and Game Preservation Fund), the forfeiture is clearly punishment under both the federal and California constitutions.

We consider the facts of this case in light of the four factors enunciated in *Bajakajian*. The violation involved a single catch with short crabs constituting 2.2% of the total catch. This is only 1.2% above the amount of short crabs permitted by law. Estes was engaged in a legal activity with a valid commercial fishing license. The evidence is that Estes has owned his own boat for twenty-one years and that he takes care to avoid having short crabs in his catch: he instructs his crew on the law, provides them with gauges to measure the crab, has them sign a contract making the crew member liable for taking in short crabs, and periodically checks with the crew for compliance consistent with safe piloting of the boat. The particular harm caused in this case was minimal: the short crabs were returned to the waters. Further, a legal basis and justification for finding the violation of Fish and Game Code § 8278(a) to be a strict liability

8

offense, obviating the prosecution to prove *mens rea*, is that the penalty for violation is minimal. (*In re Jorge M.* (2000) 23 Cal.4th at 872-3.)  The forfeiture of $47,000 constituting nearly two-thirds of the value of the entire load of crab is inconsistent with the legal justification for the elimination of wrongful intent as an element of the crime.

We, therefore, conclude that in this case, as in *Bajakajian*, there is a disproportionate difference between the amount of the forfeiture and the maximum fine: while Estes was subject to a maximum fine of only $1,000, the court's order required him to forfeit an amount forty-seven times that.

In ordering the forfeiture, the trial court noted, among other factors, that Estes had expressed no remorse for his unlawful conduct.  The court explained, "then I thought about, well, if there were remorse expressed in this case or full acceptance of responsibility, maybe I would [require forfeiture of a lesser amount]."  Where no proof of a culpable mental state is required, however, evidence of neither remorse nor contrition nor any other mental state is appropriate in imposing punishment.

We recognize that there is no precise formula for setting the amount of the forfeiture. The amount is one of proportion.  Upon remand the trial court should be guided by the four *Bajakajian* factors as explained hereinabove, and the trial court is directed to modify the amount of the forfeiture accordingly.

9

**CONCLUSION**

For the foregoing reasons, we affirm Estes' conviction, but remand the matter to the lower court for resentencing consistent with this opinion.

IT IS SO ORDERED.

Charlene Padovani Kiesselbach, Acting Presiding Judge

We Concur:

Bruce E. Chan, Associate Judge

Anne-Christine Massullo, Associate Judge

**T**rial Judge:  **Honorable Andrew Y.S. Cheng**

Counsel on Appeal:

E. Michael Linscheid, Esq., for Appellant.

George Gascón, District Attorney, and Lisa M. Culbertson, Assistant District Attorney, for Respondent.

.