[Crim. No. 14192. First Dist., Div. One. Oct. 14, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
LEO WAYNE TRAVERS, Defendant and Appellant.

**COUNSEL**

Koblick & Jacobs and Milton Jacobs for Defendant and Appellant.

Keith C. Sorenson, District Attorney, and Margaret J. Kemp, Deputy District Attorney, for Plaintiff and Respondent.

**OPINION**

**MOLINARI, P. J.**—This appeal from misdemeanor convictions in the Municipal Court to the Appellate Department of the Superior Court of the County of San Mateo was transferred to this court upon certification pursuant to rule 62 of the California Rules of Court. The question presented is whether the acts proscribed by certain provisions of the Business and Professions Code are strict liability offenses. The subject statutes are section 20911, subdivision (b) (selling or assisting in the sale of motor oil falsely represented as to brand or SAE number), section 20911, subdivision (c) (permitting another to sell oil as proscribed by § 20911, subd. (b)), section 20840 (offering motor oil for sale without labeling it as to name and brand), and section 20843 (selling reclaimed motor oil without clearly marking the product as such). Defendant was convicted of violating these statutes and his conviction was affirmed by the Appellate Department of the Superior Court of the County of San Mateo.

The convictions arose out of the following set of circumstances: Defendant is the owner of a service station in Daly City where petroleum products were sold by his employee, Greg Mitchell. Misrepresentations concerning the quality of these products were made by Mitchell in the course of his sale of the products. Defendant was not aware of Mitchell's actions nor did he order or condone such actions. Defendant was not on

the service station premises at the time the prohibited sales occurred and there was no evidence that he was aware of such sales.

■ Defendant contends that as Mitchell's employer he cannot be held criminally responsible for his employee's act unless it was proved that defendant knew of the act or intentionally aided, advised or encouraged it. This contention requires that we decide whether the doctrine of *mens rea* stated in Penal Code section 20[1] applies to a case such as this or whether it is proper to invoke the doctrine which has been applied to criminal statutes for the protection of public morals, health, peace and safety that sanctions may be imposed even though the prohibited acts are committed without criminal intent or criminal negligence.

■ It is a settled rule of law that a principal is not criminally liable for the criminal act of his agent unless he authorized, consented to, advised, aided or encouraged the specific act. (*In re Marley*, 29 Cal.2d 525, 527 [175 P.2d 832]; *People* v. *Doble*, 203 Cal. 510, 515 [265 P. 184]; *Nuffer* v. *Insurance Co. of North America*, 236 Cal.App.2d 349, 355 [45 Cal.Rptr. 918]; see *People* v. *Jarvis*, 135 Cal.App. 288, 294-295 [27 P.2d 77].) An exception to this rule is the doctrine of criminal liability without fault which has been applied to criminal statutes enacted for the public morals, health, peace and safety. (See *People* v. *Stuart*, 47 Cal.2d 167, 172-173 [302 P.2d 5, 55 A.L.R.2d 705]; *People* v. *Vogel*, 46 Cal.2d 798, 801, fn. 2 [299 P.2d 850]; Sayre, *Public Welfare Offenses* (1933) 33 Colum.L.Rev. 55, 72-75.) In general, such statutes deal with offenses of a regulatory nature and are enforceable irrespective of criminal intent or criminal negligence. (*People* v. *Stuart, supra*, at p. 172.)

In California the doctrine of criminal liability without fault has been applied to the misbranding of drugs (*People* v. *Stuart, supra*, 47 Cal.2d 167, 172-173); misbranding of onions as to weight (*People* v. *Beggs*, 69 Cal.App.2d Supp. 819, 822 [160 P.2d 600]); compounding and sale of prescriptions by nonregistered pharmacist (*Brodsky* v. *Cal. State Bd. of Pharmacy*, 173 Cal.App.2d 680, 688 [344 P.2d 68]); mislabeling of eggs (*In re Casperson*, 69 Cal.App.2d 441, 443-445 [159 P.2d 88]); shortweighting of meat (*In re Marley, supra*, 29 Cal.2d 525, 528-530); adulterated food (*People* v. *Schwartz*, 28 Cal.App.2d Supp. 775, 778 [70 P.2d 1017]); and unsanitary conditions in a nursing home (*People* v. *Balmer*, 196 Cal.App.2d Supp. 874, 877-878 [17 Cal.Rptr. 612]).

---

[1]Penal Code section 20 provides: "In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence."

■ The rationale of the doctrine of strict criminal liability is that, although criminal sanctions are relied upon, the primary purpose of the statutes is regulation rather than punishment or correction, and that the interest of enforcement for the public health and safety requires the risk that an occasional nonoffender may be punished in order to prevent the escape of a greater number of culpable offenders. (*People* v. *Stuart, supra,* 47 Cal.2d 167, 172; *People* v. *Vogel, supra,* 46 Cal.2d 798, 801, fn. 2.) In *Marley* the rationale is stated as follows: " 'There are many acts that are so destructive of the social order, or where the ability of the state to establish the element of criminal intent would be so extremely difficult if not impossible of proof, that in the interest of justice the legislature has provided that the doing of the act constitutes a crime, regardless of knowledge or criminal intent on the part of the defendant. In these cases it is the duty of the defendant to know what the facts are that are involved or result from his acts or conduct . . . .' " (29 Cal.2d at p. 529.)

The reason for the rule of strict liability is also stated in terms of legislative policy thereby: " 'Although criminal statutes are not often construed to impose sanctions in the absence of *mens rea* or guilty intent, an exception occurs where the statute is an expression of a legislative policy to be served by strict liability. [Citations.]' " (*People* v. *Steely,* 266 Cal.App.2d 591, 594-595 [72 Cal.Rptr. 368]; *People* v. *Wells,* 261 Cal.App.2d 468, 478 [68 Cal.Rptr. 400].) Such a legislative policy is evinced with respect to the statutes here involved which are couched in strict liability terminology. The statutes state that "it is unlawful" to mislabel petroleum products (Bus. & Prof. Code, § 20840 et seq.) or to pass off petroleum products as the products of any manufacturer, refiner, producer, or importer (Bus. & Prof. Code, § 20911 et seq.). These statutes do not contain any qualifying words such as "knowingly" or "intention-ally." In *Marley* the court stated the following rule: " '. . . [W]here qualifying words such as knowingly, intentionally, or fraudulently are omitted from provisions creating the offense it is held that guilty knowledge and intent are not elements of the offense . . . .' " (29 Cal.2d at p. 529; *Brodsky* v. *Cal. State Bd. of Pharmacy, supra,* 173 Cal.App.2d 680, 688.)

Apropos the legislative intent, it is significant to note that the predecessor of the present subdivision (c) of Business and Professions Code section 20911 read as follows: "It is unlawful for anyone *knowingly* to permit, direct or cause any other person to do any of the acts prohibited by this section." (Italics added.) (Stats. 1941, ch. 86, p. 1053.) The successor statute enacted at the same session of the Legislature

omitted the word "knowingly" and read, as it does now, as follows: "(c) It is unlawful for any person to permit, direct or cause any other person to do any of the acts prohibited by this section." (Stats. 1941, ch. 554, p. 1928 [now Bus. & Prof. Code, § 20911, subd. (c)].)

■ Although strict liability offenses falling in the mislabeling and misbranding category generally deal with the sales of food, beverages and drugs, they are not necessarily restricted to these items and they may include the sale, possession or use of any article that is misbranded or mislabeled in violation of general police regulations passed for the safety, health or well-being of the community. (See Sayre, *Public Welfare Offenses, supra,* 33 Colum.L.Rev. 55, 72-73, 84-88.) In *Marley* the Supreme Court, alluding to the application of the strict liability rule in the field of weights and measures, stated as follows: " 'These statutes make the seller the guarantor of the weight and quantity of the commodity sold without regard to his intent or knowledge.' " (29 Cal.2d at p. 529.) In *Brodsky* the strict liability rule is stated thusly: " 'Statutes punishing the sale of adulterated or mislabeled foods, penalizing *the selling of commodities on the basis of falsely stated weight or measure,* prohibiting the sale of intoxicating liquor, or prohibiting the mere possession of certain objects are examples of legislation positively forbidding certain acts and imposing criminal liability regardless of knowledge.' "[2] (Italics added.) (173 Cal.App.2d 680, 688.)

■ The offenses charged in the instant case deal with the misbranding and mislabeling of motor lubricating oil. These offenses are akin to those that proscribe false weights and measures and therefore can come within the field of the law of strict liability. The automobile is a recognized necessity in our society and the function of its engine is a matter of vital importance to the motorist. It is in the interest of public safety to prevent the malfunction and breakdown of motor vehicles travelling on our crowded streets and highways. An inferior or substandard oil which does not meet the viscosity requirements necessary for proper lubrication may well contribute to the malfunction or breakdown of the vehicle's engine.

Of greater significance, however, is the overriding right of the members of the public to receive what they bargain for. A service station owner or operator should be held accountable for the quality of the motor oil which he sells. If he undertakes to sell motor oil it is his responsibility to

[2] The rule is quoted verbatim from 14 Cal.Jur.2d, section 81, page 269, now 17 Cal.Jur.3d, section 66, pages 118-119.

the public to see to it that the oil he sells is not mislabeled or misbranded. He may not be heard to say that he had no knowledge that the oil he sold was misbranded or mislabeled because the law imposes upon him the duty of knowing that the motor oil he sells is of the quality and standard required by the statutes dealing with the sale and distribution of petroleum products. It is not too onerous a burden to require that the owner or operator of a service station must control and supervise his employees so as to prevent the selling by his employees of misbranded or mislabeled oil. On the other hand, an undue burden would be placed on the state if it were required to establish criminal intent by showing that the owner, operator or employer authorized, consented to, advised, ordered or encouraged the misbranding or mislabeling of motor oil by his employee or agent. To permit the owner, operator or employer to plead ignorance of the quality or the contents of that which he undertakes to sell as meeting the standards imposed by law could result in the escape of culpable offenders.

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 11, 1975. Clark, J., was of the opinion that the petition should be granted.