Opinion
WOODS, J.
Defendant appeals his conviction for violating Los Angeles County Code sections 7.80.030 and 7.80.040. We affirm.
Factual Synopsis
On June 20, 1986, Carol Willis, a deputy sheriff for Los Angeles County, was conducting an investigation on the licensing of taxicabs in Marina del Rey, an unincorporated area of Los Angeles County. The investigation was being conducted because the sheriff’s department had received numerous complaints of bandit taxicab operations in the Marina area. The investigation was conducted by calling various taxicabs, having them respond to a specified location, and then checking their licenses.[1]
Deputy Willis called L.A. Metro Taxi using a telephone number listed on a sticker or scribbled out in the restaurant from which she was conducting her investigation. The taxicab which responded was from L.A. Taxi. James Mann, the driver of the taxicab from L.A. Taxi, drove up and asked for Willis by name. The taxicab driven by Mann has “L.A. Taxi” written on it along with a telephone number which Willis called later to determine who the owner of the taxicab company was. Willis told Mann her destination, and Mann flipped the meter and proceeded to drive the taxicab. Although Willis did not recall the conversation, Mann used the taxicab’s two-way radio as he began driving.
*Supp. 9 Willis then identified herself to Mann as a deputy sheriff, had Mann pull the taxicab over to the side, and checked Mann’s driver’s licenses. Although Mann had no taxicab driver’s license from the County of Los Angeles, he did have a taxicab driver’s license from the City of Los Angeles and a regular driver’s license. At trial, the parties stipulated that neither the company, Wilmington Cab Company, Inc., a California corporation doing business as L.A. Taxi, nor the vehicle had a permit to operate in the county.
L.A. Taxi operates by receiving orders over the telephone and dispatching calls to its drivers. It is the function of the dispatchers to determine whether or not the order is for an area in which the company is licensed to operate. A driver who refuses to accept a call is subject to sanctions from L.A. Taxi.
The record is not crystal clear as to the relation between appellant, Mitchell Rouse, and L.A. Taxi. L.A. Taxi, the registered owner of the vehicle stopped by Willis, is licensed to operate taxicabs in the City of Los Angeles. The records from Los Angeles City Department of Transportation list Rouse as the owner of L.A. Taxi. The name on the city license is Mitchell Rouse, Wilmington Cab Company, doing business as L.A. Taxi. When Willis called the telephone number on the taxicab, she was informed that Mitchell Rouse was the owner of L.A. Taxi. Norman Otell, the operations manager of L.A. Taxi, testified that L.A. Taxi is a “doing business as” of Wilmington Cab Company, Inc. Otell also testified that he thought that Rouse was an officer of Wilmington Cab Company, Inc., and speculated that Rouse might be its owner. The statement on appeal and appellant’s opening brief identify Rouse as the president of Wilmington Cab Company, Inc.
On July 8, 1986, a complaint was filed charging appellant[2] with violating Los Angeles County Code sections 7.80.030[3] (operating a taxicab without paying an annual fee) and 7.80.040[4] (operating a taxicab without a vehicle *Supp. 10 permit). The People dismissed the charge against Mann for driving without a taxicab driver’s license.
Following a court trial, appellant Rouse was found guilty of the charged offenses on August 4, 1987. Rouse filed a timely notice of appeal.
The first contention of appellant, Mitchell Rouse, on appeal is that the record discloses a complete lack of evidence that appellant personally participated in the alleged violations.
Evidence in the record indicates that defendant L.A. Taxi was owned by appellant Mitchell Rouse. Evidence in the record also indicates that appellant Mitchell Rouse was listed in Los Angeles City Department of Transportation as the licensed operator of Wilmington Cab Company doing business as L.A. Taxi. Evidence in the record further indicates that Mitchell Rouse was an officer in defendant corporation. In arguing his insulation, appellant contends that there is a failure on the part of respondent to prove that appellant acted intentionally with respect to the violations for which he was convicted. Appellant further contends that the driver of the taxicab, one Thomas Mann, was an independent contractor, and therefore no criminal vicarious liability on the part of Michael Rouse resulted.
We first observe that the licensing regulations in this case give rise to “strict liability” upon breach. The rationale for strict liability offenses was explained by the California Supreme Court in In re Marley (1946) 29 Cal.2d 525 [175 P.2d 832] as follows: “ ‘There are many acts that are so destructive of the social order, or where the ability of the state to establish the element of criminal intent would be so extremely difficult if not impossible of proof, that in the interest of justice the legislature has provided that the doing of the act constitutes a crime, regardless of knowledge or criminal intent on the part of the defendant.’ ” (Id., at p. 529.)
Some of the characteristics of strict liability offenses were described by the California Supreme Court in People v. Vogel (1956) 46 Cal.2d 798 [299 P.2d 850] as follows: “Under many statutes enacted for the protection of the public health and safety, e.g., traffic and food and drug regulations, criminal sanctions are relied upon even if there is no wrongful intent. These offenses usually involve light penalties and no moral obloquy or damage to reputation. Although criminal sanctions are relied upon, the primary purpose of the statutes is regulation rather than punishment or correction. The offenses are not crimes in the orthodox sense, and wrongful intent is not required in the interest of enforcement.” (Id., at p. 801, fn. 2.)
*Supp. 11 Based on the foregoing criteria, the taxicab regulations in this case are clearly strict liability offenses. Los Angeles County has a comprehensive scheme for the regulation of taxicab operations. The ordinances provide for the setting of rates and the designation of a particular territory and require, among other things, insurance, particular vehicle equipment, and maintenance of records. These regulations must all be satisfied as a condition of licensing. (See L.A. County Code § 7.80.010 et seq.) There is no social obloquy or damage to reputation through failure to comply with a licensing regulation, and enforcement would be difficult, it not impossible, if criminal intent were an element of operating without a license. The taxicab regulations in this case are thus akin to those regulations prohibiting the sale of mislabeled or short-weighted foods, the compounding of prescriptions without a license, the sale of adulterated food, or unsanitary conditions in a nursing home, which have been upheld as strict liability offenses. (See cases collected in People v. Travers (1975) 52 Cal.App.3d 111, 114 [124 Cal.Rptr. 728].)
Therefore, we hold that no criminal intent was required to be proven before Mitchell Rouse could be convicted under the above regulations in view of our holding that the regulations were strict liability statutes.
We now address appellant’s contention that criminal liability of a corporate officer must rest on a showing of knowledge or control to sustain liability. Appellant relies on People v. Lieber (1956) 146 Cal.App.2d Supp. 910 [304 P.2d 869] for the proposition that a corporate officer must have known of or participated in a crime committed by the corporation. However, the opinion in Lieber does not discuss whether the offense involved was a strict liability offense, and its reasoning should not be applied to strict liability offenses in light of the cases discussed hereafter which clearly base liability for a strict liability offense on vicarious liability.
“It is a settled rule of law that a principal is not criminally liable for the criminal act of his agent unless he authorized, consented to, advised, aided or encouraged the specific act. [Citations.] An exception to this rule is the doctrine of criminal liability without fault which has been applied to criminal statutes enacted for the public morals, health, peace and safety.” (People v. Travers, supra, 52 Cal.App.3d 111, 114.) The court in Travers upheld the defendant’s conviction for using misrepresentations in the sale of motor oil and selling mislabeled motor oil even though the defendant “was not on the service station premises at the time the prohibited sales occurred and there was no evidence that he was aware of such sales.” (Id., at pp. 113-114.) In In re Marley, supra, 29 Cal.2d 525, the California Supreme Court found no error in the criminal conviction of the owner of a meat market for selling short-weighted meat which was weighed by an employee, even *Supp. 12 though the owner did not participate personally in the transaction, was absent from the premises at the time it occurred, and had at no time instructed the employee to give short weight.
Accordingly, we find no merit in appellant’s contention that he cannot be vicariously liable. From the record before us, appellant occupied the status of “owner,” “license permittee,” and “corporate officer.” We are unimpressed with appellant’s argument that personal involvement must be proved as a prerequisite to criminal liability against him in this instance. We hold otherwise.
Appellant next argues that vicarious liability cannot extend to a situation where the actor is an independent contractor. However, viewed in the light most favorable to the judgment below (People v. Johnson (1980) 26 Cal.3d 557, 562 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]), there is substantial evidence that the driver of the taxi was an employee of L.A. Taxi. The taxi displayed the name and telephone number of L.A. Taxi. The driver, Mr. Mann, used the cab’s two-way radio as he began driving; a reasonable inference from this radio use is that he was checking in to update his employer with his customer engagement status. The registered owner of the vehicle was L.A. Taxi. L.A. Taxi received orders over the telephone and dispatched radio calls to the drivers. It was the function of the dispatchers to determine whether or not the orders were for an area in which the company was licensed to operate. A driver who refused to accept a call was subject to sanctions from L.A. Taxi.
We find substantial evidence in the record to support the inference that the driver, Mr. Mann, was indeed an employee of L.A. Taxi and not an independent contractor. Appellant’s contention in this regard is unmeritorious.
Appellant next contends, and relies on Young v. Vienna (1962) 203 Va. 265 [123 S.E.2d 388] for the proposition that more than one instance of conduct is required in order to find a violation. The facts of Young are clearly distinguishable from the case at hand. That did not involve a regulatory scheme, but imposed a .15 percent tax on gross receipts for persons engaged in the business of renting property. The court held that one lease for a term of 25 years did not constitute the “business” of renting property and thus was not subject to the tax. In contrast to that holding, cases have repeatedly upheld convictions for the violation of a regulatory statute even though only one instance of conduct was involved (In re Marley, supra, 29 Cal.2d 525). We find appellant’s contention in this regard to be devoid of merit.
*Supp. 13 The appellant finally contends that the records from Los Angeles City indicating ownership of the L.A. Taxi company vested in Mitchell Rouse were based upon hearsay evidence and therefore erroneously admitted by the trial court.
It is axiomatic that appellate review of evidentiary rulings is conditioned upon an objection having been made in the trial court. A judgment or decision based on the erroneous admission of evidence shall not be reversed unless “[tjhere appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion. . . .” (Evid. Code, § 353, subd. (a).)
Issues relating to the admissibility of evidence must be tendered at the trial level and a ruling obtained thereon after each side has had the opportunity to fully develop the facts. (People v. Pranke (1970) 12 Cal.App.3d 935, 941 [91 Cal.Rptr. 129].) An appellate court is precluded from reviewing questions concerning the admissibility of evidence for the first time on appeal. (People v. Ortiz (1969) 276 Cal.App.2d 1, 6-7 [80 Cal.Rptr. 469]; People v. Robinson (1965) 62 Cal.2d 889, 894 [44 Cal.Rptr. 762, 402 P.2d 834].) The appellant having failed to make timely and appropriate objections to the evidence in the trial court, renders moot any issue pertaining thereto on appeal.
The judgment is affirmed in all respects.
Margolis, P. J., and Newman, J., concurring.

 Three licenses are required to operate a taxicab in the unincorporated part of Los Angeles County: an operator’s license, which the company is required to possess, a vehicle license for the individual taxicab, and a taxicab driver’s license, which the driver is required to possess. (L.A. County Code, §§ 7.80.030, 7.80.040 and 7.80.450.)

The complaint names as defendant Mitchell Rouse (d.b.a. L.A. Taxi Cab Company), while the docket reflects the defendants as “L.A. Taxi, a Division of Wilmington cab inc. of calif, a calif, corp., M. ROUSE and J. MANN Co-Defendants (s).” [Sic.] The prosecutor and the defense counsel were under the impression that both the company and Rouse were charged defendants. The court neither adopted nor rejected this interpretation. Instead, the judgment was rendered only as to Mitchell Rouse, doing business as L.A. Taxi; thus, it appears that L.A. Taxi is not a discrete defendant nor a proper party to the appeal.

Los Angeles County Code section 7.80.030 provides: “Every taxicab operator shall first procure a license and pay an annual license fee in the amount set forth in Section 7.14.010 of this title, under the appropriate heading.”

Los Angeles County Code section 7.80.040 provides: “Every taxicab into which passengers are accepted for transportation within the unincorporated area of the county of Los Angeles shall be required to display a vehicle permit affixed to the rear portion of such taxicab. Such vehicle permit shall be issued upon payment of an annual permit fee in amounts set *Supp. 10 forth in Section 7.14.010 of this title, under the appropriate heading, and upon authorization under a taxicab operator’s license.”