Filed 12/13/19

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H046762 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. Nos. 17AP000004, MS34l769A) |
| v. | |
| GERARD ROBERT WETLE, | |
| Defendant and Appellant. | |

A jury convicted defendant Gerard Robert Wetle of 28 misdemeanor violations of the Fish and Game Code based on the placement of commercial crab traps in protected sanctuary waters. Defendant's commercial fishing license number was attached to the illegally placed crab traps, which the prosecutor argued was sufficient to convict him of the strict liability offenses. Defendant presented evidence that he was out of the country at the time the traps were placed by a lessee and argued that he therefore was not liable for their illegal placement. We conclude that the trial court committed prejudicial instructional error requiring reversal of defendant's convictions. The People shall have the option to retry defendant, as we reject his sufficiency of the evidence claim.

I.      BACKGROUND

A.      *Factual Summary*

Commercial crab traps are metal and weigh about 75 pounds each. Each crab trap is required to have a destruction device so that crabs and other trapped wildlife animals can escape if the trap is lost at sea or abandoned. The destruction device is simply a piece of treated cotton twine holding the trap's lid shut. Over time, the twine breaks

down in the water; when the twine breaks, the lid of the trap opens and the crabs can escape. Fishermen generally place a bait jar inside each trap to attract crabs. The bait jar is not permitted to be attached to the lid because if it is, it will prevent the destruction device from working properly. Each crab trap sits on the bottom of the ocean and is attached to a buoy that floats on top of the water so that fishermen can locate and retrieve the trap. The buoy is required to be marked with a commercial fishing license number, known as an "L number."

Joseph Ames, a lieutenant with the California Department of Fish and Wildlife, testified that he and his crew, including Justin Cisneros, were patrolling Monterey Bay on April 2, 2016. While on patrol, they saw crab trap buoys in the Soquel Canyon State Marine Conservation Area, where crab trapping is prohibited. They pulled 29 crab traps out of the water, each of which was attached to a buoy bearing defendant's L number. Ames testified that the L number on a crab trap buoy signifies the fisherman who is operating and responsible for the trap. Also attached to each crab trap pulled by Ames's crew was a buoy tag bearing the Dungeness crab permit number belonging jointly to defendant's father and defendant's wife. That Dungeness crab permit number is associated with a specific fishing vessel—the Pacific Spirit—which, like the permit, is owned by defendant's father and defendant's wife. Twenty-five of the pulled traps were located in the marine conservation area. In three of the pulled traps, the bait jar was placed in a manner that prevented the destruction device from operating. The crew released 214 crabs from the traps.

The crew put a compliance check card—a business card with a note to call the Fish and Game warden—in the bar jar of one of the traps and returned it to the water. Guy Bond called in response to that card.

Bond is a commercial fisherman and the skipper of the Pacific Spirit, the fishing vessel owned by defendant's father and defendant's wife. Defendant's father testified

that defendant loaned the crab traps to him. Bond and defendant testified that Bond leased the crab traps from defendant.

Bond testified that he was operating the Pacific Spirit between April 1 and 3, 2016 and that he was the one who inadvertently placed the traps in the marine conservation area. Defendant was not on the boat at the time. Bond said defendant's L number was on the crab trap buoys when he received the traps from defendant and Bond simply left those buoys in place while he was operating the gear. Bond was not aware of any requirement that his L number be on the buoys. At trial, Bond conceded that he had lied and said he was not operating the vessel during the relevant time period when he called in response to the compliance check card. Bond testified that he had lied to protect his commercial fishing license. Bond admitted to having previously been convicted of three felonies and five misdemeanors.

Nicholas Erardi, a fisherman who had worked for defendant for five years, testified that he and defendant were in Mexico from early February 2016 until early April 2016 working on defendant's new fishing boat. They returned to Monterey in that vessel on April 17, 2016. He recalled the date because "It was a big deal. It's a new boat."

Defendant likewise testified that he was in Mexico with Erardi working on his new boat between February and early April 2016. He was not crab fishing in Monterey Bay at that time. Defendant testified that he received a call from Cisneros about the illegally placed crab traps in early April while he was on his new boat. Defendant described Bond as "part of the family because he runs my father's boat." And defendant said that when he and Bond are on the water in separate boats they work together and communicate about where the fish are located.

### B.    *Procedural History*

The Monterey County District Attorney charged defendant with 25 counts of violating California Code of Regulations, title 14, section 632, subdivision (a)(1)(C), (section 632) and three counts of violating California Code of Regulations, title 14,

3

section 180.2, (section 180.2) all of which are misdemeanors under Fish and Game Code section 12000, subdivision (a)).

A four-day jury trial took place in November 2016. The prosecutor argued in her closing argument that defendant was guilty because his L number was on the illegally placed crab traps. She argued that whether defendant had leased the traps to Bond was irrelevant, as was whether he was on the boat. Her theory was that "they're his. They're his responsibility." The jury found defendant guilty on all counts.

Defendant filed an unsuccessful motion for a new trial. Thereafter, on February 8, 2017, the court suspended imposition of sentence and placed defendant on probation for three years. The court ordered defendant to serve 40 days in county jail as a condition of his probation and ordered him to pay a fine of $4,100 in addition to other fines and fees.

Defendant timely appealed. In an opinion filed on February 15, 2019, the appellate division of the Monterey County Superior Court affirmed. Defendant filed a petition in this court requesting to have the case transferred here. This Court granted that petition to transfer on April 22, 2019.

## II.    DISCUSSION

The thrust of defendant's arguments on appeal is that the People failed to show, and the jury was permitted to convict without finding, that his conduct violated the law. The Attorney General contends that even if Bond, not defendant, placed the crab traps in the state marine conservation area (in some cases, without operable destruction devices), defendant can be held criminally liable for Bond's acts because the regulations at issue are strict liability offenses, defendant knew Bond was going to fish with the traps, and defendant stood to profit from Bond's use of the traps. In essence, the Attorney General argues for vicarious liability. But he articulates no legal basis for imposing vicarious liability on defendant.

We agree with defendant that his convictions cannot stand. As discussed below, the trial court failed to instruct the jury on all the elements of the offenses and that error

4

was not harmless. Accordingly, we reverse. However, because we reject defendant's sufficiency-of-the-evidence argument, the People have the option to retry him.

### A. Failure to Instruct on Elements of the Offenses

#### 1. Legal Principles

" 'All criminal defendants have the right to "a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." ' [Citation.]" (*People v. Rivera* (2019) 7 Cal.5th 306, 333.) Accordingly, " '[t]he trial court has a sua sponte duty to instruct the jury on the essential elements of the charged offense[s].' [Citation.]" (*Id.* at p. 332.) "Failure to do so is a 'very serious constitutional error because it threatens the right to a jury trial that both the United States and California Constitutions guarantee. [Citations.]' " (*Id.* at pp. 332-333.) Error in failing to instruct on all the elements of an offense "is reversible unless 'it is clear beyond a reasonable doubt that a rational jury would have rendered the same verdict absent the error.' [Citation.]" (*Id.* at p. 333.)

"We determine whether a jury instruction correctly states the law under the independent or de novo standard of review. [Citation.] Review of the adequacy of instructions is based on whether the trial court 'fully and fairly instructed on the applicable law.' [Citation.] ' "In determining whether error has been committed in giving or not giving jury instructions, we must consider the instructions as a whole . . . [and] assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given." [Citation.]' [Citation.] 'Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible [of] such interpretation.' [Citation.]" (*People v. Ramos* 2008) 163 Cal.App.4th 1082, 1088.)

5

### 2. The Trial Court Failed to Instruct on All the Elements of the Charged Offenses

#### a. The Elements of the Charged Offenses

Section 632 makes it "unlawful to injure, damage, take, or possess any living, geological, or cultural marine resource" from a state marine conservation area. Section 180.2 requires "every trap used to take fin fish, mollusks or crustaceans [to] contain at least one destruction device that complies with the specifications described in this [s]ection. The use of any structures or materials that defeat or interfere with the purpose of the destruct device is prohibited." Violations of the foregoing regulations are misdemeanors. (Fish & G. Code, § 12000.)

As a general rule, "every crime has two components: (1) an act or omission, sometimes called the actus reus; and (2) a necessary mental state, sometimes called the mens rea." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1117.) Public welfare offenses—those "involv[ing] the violation of statutes that are purely regulatory in nature and seek to protect the health and safety of the public"—are the exception to the rule; they do not require "[p]roof of a culpable mental state." (*People v. King* (2006) 38 Cal.4th 617, 623.) That is, they are strict liability offenses. (*People v. Rubalcava* (2000) 23 Cal.4th 322, 331 ["Strict liability offenses eliminate the 'requirement of *mens rea*; that is, the requirement of a "guilty mind" with respect to an element of a crime' "].) But the requirement that the defendant's conduct violated the law remains. (See CALCRIM No. 254 [a person is guilty of a strict liability crime if they "do the prohibited act or to fail to do the required act"]; *People v. Stuart* (1956) 47 Cal.2d 167, 172 ["public welfare statutes . . . call for the sanctions imposed even though the prohibited acts are committed without criminal intent or criminal negligence"].)

The parties agree that violations of section 632 and section 180.2 are strict liability public welfare offenses. "Public welfare offenses have been roughly classified to include violations of general police regulations, passed for the safety, health or well-being of the

6

community.  [Citations.]  The penalties imposed for violations of the offense are an indication of legislative intent:  if the penalties prescribed are light, misdemeanor penalties, strict liability is more likely."  (*People v. Estes* (2013) 218 Cal.App.4th Supp. 14, 19.)  " ' "The greater the difficulty [of proving a violator had a culpable mental state], the more likely it is that the legislature intended to relieve the prosecution of that burden so that the law could be effectively enforced." ' "  (*Id.* at p.  20.)

These considerations support the conclusion that violations of section 632 and section 180.2 are public welfare offenses to which strict liability applies.  Both provisions are regulations passed to promote the health and well-being of the State's living marine resources.  Section 632 helps implement a statutory scheme meant "to protect, conserve, or otherwise manage . . . living marine resources and their habitats . . . ."  (Pub. Resources Code, § 36602, subd. (d) [defining "Marine managed area," which includes "State marine conservation area"].)  Section 180.2 is part of a scheme designed "to minimize the adverse effects [of fish trapping] on living marine resources."  (Fish & G. Code, § 9003.)  Misdemeanor penalties are imposed for violations of sections 632 and 180.2.  (Fish & G. Code, § 12000.)  Finally, it would be difficult for the prosecution to prove that a defendant *intended* to place traps in a state marine conservation area and/or without operable destruction devices, rather than having done so inadvertly.  Accordingly, we agree that the offenses at issue are strict liability offenses.

The question remains what *conduct* violates the regulations at issue.  Based on the plain regulatory language, to violate section 632 one must "injure, damage, take, or possess any living, geological, or cultural marine resource" from a state marine conservation area. And, to violate section 180.2 one must employ a "trap used to take fin fish, mollusks or crustaceans [that does not] contain at least one destruction device that complies with the specifications described in this [s]ection" or "use [a] structure[] or material[] that defeat[s] or interfere[s] with the purpose of the destruct device . . . ."

Bond testified that he, not defendant, placed traps in a state marine conservation area and used crab traps without functioning destruction devices. Defendant and Erardi testified that defendant was out of the country at the time the offenses were committed. The Attorney General contends that, even if the foregoing testimony is believed, defendant can be held liable for the regulatory violations based on his "*act* of entrusting the traps to [Bond,] a member of his business family." The Attorney General says defendant's "connection to the traps was sufficiently close to justify the jury in its verdicts." But the Attorney General does not articulate a legal basis for holding defendant criminally liable for the conduct of a third party. Nor does he indicate where the line should be drawn in terms of imputing liability for regulatory violations to non-actors.

The Attorney General relies on *Morissette v. United States* (1952) 342 U.S. 246 and *People v. Chevron Chemical Co.* (1983) 143 Cal.App.3d 50 (*Chevron*) for his position that defendant can be criminally liable for the conduct of a third party. Neither case helps him. *Morissette* did not involve liability for a third party's conduct. In *Chevron*, the only question was whether the offense at issue—violating Fish and Game Code section 5650—was a strict lability offense; there was no dispute that Chevron was the party responsible for the illegal conduct of improperly discharging fertilizer process wastes. (*Chevron*, *supra*, at p. 52.) Of course, Chevron, as a corporation, acts through its employees. But corporations, like Chevron, are persons under the law. (See CALCRIM No. 122; Fish & G. Code, § 67 [defining "person" to include corporations].) And, "[i]n California, a corporation may be criminally liable for the conduct of its officers or agents or employees." (*Sea Horse Ranch, Inc. v. Superior Court* (1994) 24 Cal.App.4th 446, 456.) Defendant is not a corporation and no evidence was presented showing that Bond was acting as defendant's agent or employee; therefore, *Chevron* has no application here.

In the context of strict liability offenses, "a principal or employer may be criminally liable for the agent's or employee's act done within the scope of the employment, irrespective of any personal knowledge or immediate direction on the part of the principal or

8

employer." (17 Cal.Jur.3d Criminal Law: Core Aspects § 152.) For example, in *People v. Schwartz* (1937) 28 Cal.App.2d Supp. 775, 776, the defendant was convicted of a strict liability offense under the Pure Foods Act based on the sale of adulterated eggs by his employee "in the regular course of his business . . . ." "The fact that the sale of the adulterated food . . . was made by an employee of defendant without his personal knowledge or immediate direction [was held to be] immaterial." (*Id.* at p. 781.) Similarly, in *People v. Travers* (1975) 52 Cal.App.3d 111, 113, the owner of a service station was held liable for strict liability offenses involving the sale of misbranded or mislabeled motor oil, where the sale was made by his employee without the owner's knowledge. In *People v. Rouse* (1988) 202 Cal.App.3d Supp. 6, the owner of a taxi company was convicted of violating taxi licensing regulations, which were strict liability offenses, based on the acts of one of his driver employees. And in *People v. Casey* (1995) 41 Cal.App.4th Supp. 1, 8-9, the court held that a rancher could be convicted of misbranding cattle, a strict liability offense, based on vicarious liability where the act of misbranding was carried out by one of the cowboys employed by the rancher. But again, the prosecutor did not argue below, and it has not been argued on appeal, that defendant was Bond's employer or that defendant otherwise exercised control over Bond's use and placement of the crab traps. Accordingly, the cases discussed above do not support imposing criminal liability on defendant for Bond's conduct.

In sum, to prove a violation of section 632, the People must prove that *the defendant* "injure[d], damage[d], [took], or possess[ed] any living, geological, or cultural marine resource" from a state marine conservation area. To prove a violation of section 180.2, the People must prove that *the defendant* employed a "trap used to take fin fish, mollusks or crustaceans [that did not] contain at least one destruction device that complies with the specifications described in this [s]ection" or "use[d] [a] structure[] or material[] that defeat[ed] or interfere[d] with the purpose of the destruct device . . . ." Next, we consider whether the instructions adequately communicated those elements to the jury.

9

### b. The Jury Instructions

As to the alleged violations of section 632, the jury was instructed with "[s]pecial instruction number one." It provided: "Every trap used to take crab shall be marked with a buoy. Each buoy shall be marked with the operator's commercial fishing license identification number only. Fish and Game Code section 9006, subsection (b). [¶] It is unlawful to willfully or recklessly disturb, move, or damage any trap that belongs to another person and that is marked with a buoy identification number. Fish and Game Code section 9002, subsection (a). [¶] Any trap used without a buoy or with a buoy which is not marked, pursuant to section 9006, is a public nuisance and shall be moved from the waters of this state by any person authorized to enforce this Code. Fish and Game Code section 9007. [¶] The law does not require that the Defendant be present at the time the fish or . . . crustaceans were injured, damaged, taken or possessed. [¶] To find the Defendant guilty of Counts 1 through 25, the People must prove that: [¶] One, a fish or crustacean was injured, damaged, taken or possessed. [¶] Two, in a state marine conservation area."

As to the alleged violations of section 180.2, the jury was instructed with "special instruction number two." It stated: "Every trap shall have at least one destruction device which meets specifications approved by the California Department of Fish and Wildlife. In order to minimize the adverse effects on living marine resources, the specifications for destruction devices shall provide for a device that destructs rapidly enough to facilitate escape of a substantial proportion of all species confined in the trap from any trap that cannot be raised. The law does not require that the Defendant be present at the time the . . . trap was used. [¶] To find the Defendant guilty of Counts 27 through 29, the People must prove that: [¶] One, a trap used for the taking . . . crab; [¶] Two, did not have at least one destruction device."

The jury also was instructed with CALCRIM No. 254, which is used in instructing on strict liability offenses. (CALCRIM No. 254 Bench Notes.) Specifically, the court instructed: "[f]or you to find a person guilty of the crimes of taking any fish or crustacean

10

in a state marine conservation area, in violation of 14 California Code of Regulations, CCR, section 632, as alleged in Counts 1 through 25, or to find a person guilty of deploying a crab trap without a destruction device, in violation of 14 CCR, section 180.2, as alleged in Counts 27 through 29, a person only needs to do the prohibited act, or fail to do the required act. The People do not need to prove any intent or other mental state."

### c. *The Jury Instructions Omitted Elements of the Offenses*

### i. *Section 632*

As the Attorney General concedes, special instruction one failed to inform jurors that, to violate section 632, a person must "injure, damage, take, or possess [a] living, geological, or cultural marine resource" from a state marine conservation area. The Attorney General contends that this omission was cured by CALCRIM No. 254, which informed jurors that "a person only needs to do the prohibited act, or fail to do the required act" to be guilty of the offenses.

We are not persuaded because the instructions as a whole did not clearly identify the requisite "prohibited act" for purposes of a section 632 violation. As discussed above, that regulation prohibits "injur[ing], damag[ing], tak[ing], or possess[ing] any living, geological, or cultural marine resource" from a state marine conservation area; those are the prohibited acts. But the instructions did not make that clear. Instead, special instruction one began with a discussion of the requirement that every crab trap be marked with a buoy bearing the L number of "the operator"—an undefined term. That portion of the instruction had nothing to do with the elements of a section 632 violation. Yet its inclusion misleadingly suggested that the presence of one's L number on an illegally placed crab trap violates section 632.

In her closing argument, the prosecutor claimed that defendant was not required to have carried out one of the prohibited acts to be found guilty. She argued: "So under strict liability, a person has to do a prohibited act, or fail to do a required act. So the required act here, of course it's common sense that this is your trap. This has your license number on it.

11

You've got a duty to make sure that that trap is used the right way."  The prosecutor further argued that whether defendant had leased the traps to Bond was irrelevant because the traps are "his. They're his responsibility."  Thus, in her view, the fact that defendant's traps were used *by anyone* to do the prohibited act subjected him to liability.  As discussed above, that is an incorrect statement of the law, as it eliminates the actus reus of the crime.  In light of the prosecutor's argument, we cannot conclude that jurors correlated special instruction one and CALCRIM No. 254 to divine the element the court omitted—namely, that defendant person "injure, damage, take, or possess [a] living, geological, or cultural marine resource" from a state marine conservation area to violate section 632.  (Cf. *People v. Lua* (2017) 10 Cal.App.5th 1004, 1014 [in rejecting argument that instructions did not properly set forth the elements of the crime, noting that "the parties' closing arguments, particularly the prosecution's, diminished any possibility of confusion"].)

### ii.  Section 180.2

Special instruction two allowed jurors to convict defendant of violating section 180.2 if they found that "a trap used for the taking [of] . . . crab . . . did not have at least one destruction device."  It did not instruct jurors that they must find that defendant himself used the defective trap, which is an element of the offense.  As with special instruction one, we reject the Attorney General's argument that the omission was cured by CALCRIM No. 254. It is unrealistic to believe jurors would have discerned from the instructions that the prosecution was required to prove that defendant used a crab trap without a destruction device, given that the prosecutor's sole argument was that no such requirement existed.

### d.  The Error was not Harmless Beyond a Reasonable Doubt

We must reverse unless the trial court's failure to instruct on all the elements of the offenses was harmless.  Such an error is harmless only if we determine beyond a reasonable doubt that a rational, properly instructed jury would have rendered the same verdict.  (*People v. Merritt* (2017) 2 Cal.5th 819, 827.)  We cannot make that

12

determination here. To the contrary, we conclude it is reasonably likely that the jury convicted defendant on the theory argued by the prosecutor: Bond committed a regulatory violation using defendant's traps. And we further conclude that it is reasonably likely the jury would not have convicted defendant of violating section 632 had it been properly instructed that defendant was guilty only if he "injur[ed], damag[ed], [took], or possess[ed] any living, geological, or cultural marine resource." Similarly, we conclude that it is reasonably likely the jury would not have convicted defendant of violating section 180.2 had it been properly instructed that defendant was guilty only if he used "a trap used for the taking [of] . . . crab . . . that did not have at least one destruction device." Because the instructional errors were not harmless, we must reverse defendant's convictions.

### B. Sufficiency of the Evidence

Defendant also argues there was insufficient evidence to support his convictions. Although reversal is required based on the instructional errors alone, we nevertheless consider his insufficiency of the evidence argument to determine whether retrial is barred by double jeopardy principles. (*Unites States v. DiFrancesco* (1980) 449 U.S. 117, 131 ["the Double Jeopardy Clause prohibits retrial after a conviction has been reversed because of insufficiency of the evidence"].)

"When considering a challenge to the sufficiency of the evidence to support a criminal conviction, we review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Cortes* (1999) 71 Cal.App.4th 62, 71.) "In making this determination, we do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses." (*Ibid.*) " 'The testimony of a single witness is sufficient to uphold a judgment even if it is

13

contradicted by other evidence, inconsistent or false as to other portions. [Citations.]'
[Citation.]" (*In re Robert V.* (1982) 132 Cal.App.3d 815, 821 (*Robert V.*).)

Here, it was undisputed that defendant's L number was on the crab trap buoys.
Lieutenant Ames testified that the L number on a crab trap buoy signifies the fisherman
who is operating the trap. The foregoing is substantial evidence from which a rational
jury could have concluded that defendant, not Bond, illegally placed the crab traps, some
without destruction devices. While Bond, defendant's father, Erardi, and defendant all
testified otherwise, jurors could have disbelieved them. Each had a motive to lie—
defendant and his father to protect defendant, Bond and Erardi to protect their jobs with
defendant's family. And Bond, a key witness, had credibility problems. He admitted
lying to the Fish and Wildlife warden and he had suffered numerous felony convictions.
In sum, the record—when viewed in the light most favorable to the judgment below—
contains sufficient evidence from which a rational jury could have concluded that
defendant was guilty of the charged offenses.

## III.    DISPOSITION

The judgment is reversed and the matter is remanded to the trial court for possible
retrial.

_____

ELIA, J.

WE CONCUR:


_____

GREENWOOD, P. J.



_____

PREMO, J.




*People v. Wetle*
H046762

Trial Court:                                      Monterey County Superior Court
                                                  Superior Court Nos:  17AP000004, MS34l769A


Trial Judges:                                     Honorable Carrie McIntyre Panetta
                                                  Honorable Pamela L. Butler
                                                  Honorable Andrew G. Liu
                                                  Honorable Venessa W. Vallarta

Counsel for Plaintiff and Respondent:             Xavier Becerra
THE PEOPLE                                        Attorney General

                                                  Jeffrey M. Laurence
                                                  Senior Assistant Attorney General

                                                  Donna M. Provenzano
                                                  Supervising Deputy Attorney General

                                                  David H. Rose
                                                  Deputy Attorney General

Counsel for Defendant and Appellant:              E. Michael Linscheid
GERARD ROBERT WETLE                               J. David Nick
                                                  Law Offices of J. David Nick